1   WALTER F. BROWN (STATE BAR NO. 130248)
      wbrown@paulweiss.com
2   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
    535 Mission Street, 24th Floor
3   San Francisco, CA  94105
    Telephone:     (628) 432-5111
4
    LIZA M. VELAZQUEZ (*pro hac vice application to be submitted*)
5     lvelazquez@paulweiss.com
    DAVID W. BROWN (*pro hac vice application to be submitted*)
6     dbrown@paulweiss.com
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
7   1285 Avenue of the Americas
    New York, NY  10019-6142
8   Telephone:     (212) 373-3000

9   Attorneys for Defendant
    AMAZON.COM SERVICES, LLC
10

11                  UNITED STATES DISTRICT COURT

12                EASTERN DISTRICT OF CALIFORNIA

13

14  MICHELLE RIZVANOVIC, individually         Case No.
    and on behalf of other persons similarly
15  situated,                                 **DEFENDANT AMAZON.COM
                                              SERVICES, LLC'S NOTICE OF
16              Plaintiff,                     REMOVAL OF CLASS ACTION**

17        v.                                  [Removal from the Superior Court of
                                              California, County of Kern, Case No.
18  AMAZON.COM SERVICES, LLC, a               BCV-21-102647]
    Delaware limited liability corporation, and
19  DOES 1 through 10, inclusive,             Complaint Filed: November 4, 2021

20              Defendants.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     SUMMARY OF ALLEGATIONS ..................................................................... 1

II.    THIS COURT HAS ORIGINAL JURISDICTION UNDER CAFA ................................ 3

    A.    The Aggregate Number of Putative Class Members is 100 or Greater....................5

    B.    The Parties Have Minimal Diversity Under CAFA .................................................6

    C.    The Amount in Controversy Exceeds $5 Million .....................................................7

        1.    Plaintiff's Allegations Regarding Lost Wages Alone Establish that the Amount in Controversy Exceeds $5 Million.......................................... 9

            i.    Alleged Pre-Separation Lost Wages ............................................ 10

            ii.   Alleged Post-Separation Lost Wages............................................ 11

        2.    Plaintiff's Requests for Attorneys' Fees and Punitive Damages Place Additional Amounts in Controversy, Further Exceeding the CAFA Threshold...................................................................................... 13

III.   REMOVAL SATISFIES ALL OTHER REQUIREMENTS UNDER 28 U.S.C. § 1446 17

IV.    CONCLUSION ................................................................................................ 18

DEFENDANT AMAZON.COM SERVICES, LLC'S NOTICE OF REMOVAL OF CLASS ACTION

1

## **TABLE OF AUTHORITIES**

2

**Cases**                                                                          **Page(s)**

3

*3123 SMB, LLC* v. *Horn*,
4   880 F.3d 461 (9th Cir. 2018)................................................................. 7

5   *Acad. of Country Music* v. *Cont'l Cas. Co.*,
    991 F.3d 1059 (9th Cir. 2021)…………………………………………………..17
6

*Arias* v. *Residence Inn by Marriott*,
7   936 F.3d 920 (9th Cir. 2019)........................................................ 8, 9, 13

8   *Campbell* v. *Vitran Express, Inc.*,
9   471 F. App'x 646 (9th Cir. 2012) ......................................................... 8

10  *Cash* v. *Smart-Professionals, LLC*,
    Nos. JCCP4871 / RG16800585 (Cal. Super. Ct. Aug. 20, 2018) .......................................... 14
11

*Castillo* v. *Trinity Servs. Grp., Inc.*,
12   No. 1:19-CV-01013-DAD-EPG, 2020 WL3819415 (E.D. Cal. July 8, 2020) ...................... 14

13  *Chambers* v. *Penske Truck Leasing Corp.*,
14   No. 1:11-cv-00381 LJO GSA, 2011 WL 1459155 (E.D. Cal. Apr. 15, 2011) ..................... 15

15  *Contreras* v. *BMW of N. Am., LLC*,
    No. CV 18-8014 PA (MAAx), 2018 WL 4849107 (C.D. Cal. Oct. 3, 2018) ........................ 7
16

*Dart Cherokee Basin Operating Co., LLC* v. *Owens*,
17   574 U.S. 81 (2014)................................................................... 4, 7, 9

18  *Davis* v. *HSBC Bank Nev., N.A.*,
19   557 F.3d 1026 (9th Cir. 2009)................................................................ 6

20  *Day* v. *Zimmer, Inc.*,
    636 F. Supp. 451 (N.D.N.Y. 1986) ........................................................ 7
21

*Ferrell* v. *Express Check Advance of S.C., LLC*,
22   591 F.3d 698 (4th Cir. 2010)................................................................. 6

23  *Garza* v. *Brinderson Constructors, Inc.*,
24   178 F. Supp. 3d 906 (N.D. Cal. 2016) .................................................. 7

25  *Gonzalez* v. *Comenity Bank*,
    No. 1:19-CV-00348-AWI-EPG, 2019 WL 5304925 (E.D. Cal. Oct. 21, 2019).................... 14
26

*Hertz Corp.* v. *Friend*,
27   559 U.S. 77 (2010)............................................................................. 6

28

*Ibarra* v. *Manheim Invs., Inc.*,
  775 F.3d 1193 (9th Cir. 2015)...................................................................................... 4

*Jack* v. *Ring, LLC*,
  __ F. Supp. 3d __, No. 21-cv-00544-HSG, 2021 WL 3510291
  (N.D. Cal. Aug. 10, 2021)............................................................................................ 6

*Kanter* v. *Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir. 2001).................................................................................. 6, 16

*Kittel* v. *City of Oxnard*,
  No. CV-17-6709-MWF (GJSx), 2018 WL 6004524 (C.D. Cal. Feb. 20, 2018) ...................... 4

*Korn* v. *Polo Ralph Lauren Corp.*,
  536 F. Supp. 2d 1199 (E.D. Cal. 2008)........................................................................ 8

*LaCross* v. *Knight Transp. Inc.*,
  775 F.3d 1200 (9th Cir. 2015)...................................................................................... 8

*Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*,
  526 U.S. 344 (1999)...................................................................................................... 17

*Ramirez* v. *Jack in the Box, Inc.*,
  JVR No. 1908020049, No. BC593619, 2019 WL 3731275
  (Cal. Super. Ct. June 11, 2019)................................................................................ 16

*Salter* v. *Quality Carriers, Inc.*,
  974 F.3d 959 (9th Cir. 2020).................................................................................. 7, 9

*Samson* v. *Wells Fargo Bank, N.A.*,
  JVR No. 2004160018, No. 2:16CV0489, 2020 WL 1890594
  (C.D. Cal. Mar. 13, 2020)........................................................................................ 16

*Simmons* v. *PCT Tech.*,
  209 F. Supp. 2d 1029 (N.D. Cal. 2002) ...................................................................... 15

*Tarver* v. *Integrated Airline Servs., Inc.*,
  Nos. BCS596694, BC623647, 2017 WL 7737148
  (Cal. Super. Ct. Oct. 16, 2017).................................................................................. 14

*Thompson* v. *Big Lots Stores, Inc.*,
  No. 1:16-cv-01464-LJO-JLT, 2017 WL 590261 (E.D. Cal. Feb. 13, 2017) ........................ 15

*Vasquez* v. *RSI Home Prods., Inc.*,
  No. 8:20-CV-01494-JWH-JDEx, 2020 WL 6778772 (C.D. Cal. Nov. 12, 2020)................... 14

**Statutes**

28 U.S.C. § 84(b) ............................................................................................................ 17

28 U.S.C. § 1332(d) (the Class Action Fairness Act of 2005 ("CAFA")) ............................ *passim*

28 U.S.C. § 1441 ......................................................................................................... 1

28 U.S.C. § 1446 ................................................................................................... 1, 17

28 U.S.C. § 1453 ............................................................................................... 1, 4, 17

Cal. Bus. & Prof. Code § 17200, *et seq*. ................................................................. 3

Cal. Gov't Code § 12940 ...................................................................................... 3, 9

Cal. Gov't Code § 12965(b) .................................................................................... 13

**Other Authorities**

E.D. Cal. R. 120(d) ................................................................................................. 17

E.D. Cal. R. 133(i)(3) ............................................................................................. 15

Fed. R. Civ. P. 23 ..................................................................................................... 5

DEFENDANT AMAZON.COM SERVICES, LLC'S NOTICE OF REMOVAL OF CLASS ACTION

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant Amazon.com Services, LLC ("Amazon") removes the above-entitled action filed in the Superior Court of the State of California, County of Kern, to the United States District Court for the Eastern District of California.  This removal is made pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act of 2005 ("CAFA")), and removal jurisdiction under 28 U.S.C. §§ 1441(a), 1446, and 1453, on the following grounds:

**I.      SUMMARY OF ALLEGATIONS**

1.      On November 4, 2021, Plaintiff Michelle Rizvanovic filed an unverified putative class action complaint in the Superior Court of the State of California for the County of Kern, entitled *Michelle Rizvanovic* v. *Amazon.com Services, LLC*, Case No. BCV-21-102647 (the "Complaint").

2.      On November 23, 2021, Plaintiff served Amazon with copies of a summons, the civil case cover sheet, and the Complaint.  Copies of these documents, others entered in the state court action, and the Proof of Service filed on December 8, 2021 are attached as Exhibits A through F to the Declaration of Walter F. Brown in Support of Defendant's Notice of Removal.

3.      Defendant Amazon operates Fulfillment Centers in California, where it employs people to sort, pack, and ship items to other Amazon facilities and to customers.  Plaintiff alleges that in October 2020, Amazon hired her to work 30 to 39 hours each week as a Fulfillment Associate at a facility in Bakersfield.  Compl. ¶¶ 17–18, 22.  Plaintiff alleges that, on her second day of work, she began experiencing pain and swelling around the fourth to fifth hours of her six-hour shift due to osteoporosis and stress fractures in her feet.  *Id.* ¶¶ 19, 21–22.  According to Plaintiff, she subsequently requested an accommodation from Amazon to permit her to work no more than 20 hours per week.  *Id.* ¶¶ 25, 47.  Plaintiff claims that, in response, Amazon suspended

her without pay and placed her "on a leave of absence, against [her] will or consent" instead of addressing her accommodation request. *Id.* ¶¶ 34, 39. Further, Plaintiff alleges that she considered herself constructively terminated based on her disability on December 11, 2020 because she had been placed "in a state of limbo, without pay, while waiting for numerous employees from various departments to address her accommodation request." *Id.* ¶¶ 58, 74.

4.     More broadly, Plaintiff claims that "Defendant[], as a matter of policy, forced and/or pushed its employees to take unpaid leave of absences [sic] instead of granting accommodations." *Id.* ¶ 59. According to the Complaint, "[u]pon information and belief, Defendants retaliated against Plaintiff and others similarly situated for exercising rights under California's Fair Employment and Housing Act ("FEHA"), for insisting that their medical needs be accommodated, and/or for complaining about, reporting, or perceivably reporting Defendants' discriminatory acts, by ignoring, delaying, or denying requests for accommodations, demoting, terminating, or constructively terminating." *Id.* ¶ 60.

5.     In the Complaint, Plaintiff seeks to certify a class of "[a]ll current and/or former non-exempt employees that worked for Defendant[] in California within four (4) years prior to the filing of this Complaint and had a disability or medical condition or were otherwise considered disabled under FEHA." *Id.* ¶ 64.

6.     The Complaint alleges that the putative class includes six subclasses:

- **Disability Discrimination Subclass**: All members of the Class who were subjected to unlawful discrimination based on a disability (actual or perceived) and/or medical condition (actual or perceived).

- **Failure to Prevent Discrimination Subclass**: All members of the Class who were subjected to unlawful discrimination based on a disability (actual or perceived) and/or medical condition (actual or perceived) and where Defendants were aware of and failed to prevent such discrimination.

- **Failure to Provide a Reasonable Accommodation Subclass**: All members of the Class who were subjected to Defendants' failure to provide reasonable

accommodations for a disability (actual or perceived) and/or medical condition (actual or perceived).

- **Failure to Provide a Timely, Good Faith Interactive Process Subclass**: All members of the Class who were subjected to Defendants' failure to provide a timely, good faith interactive process.

- **Retaliation in Violation of FEHA Subclass**: All members of the Class who were retaliated against for engaging in protected activity under FEHA.

- **Retaliation in Violation of Public Policy Subclass**: All members of the Class who were retaliated against for engaging in protected activity under state public policy.

*Id.* ¶ 65.

7.     Plaintiff asserts various claims related to disability discrimination on behalf of herself and the proposed class.  Plaintiff brings seven causes of action: (1) Disability Discrimination in violation of California Government Code section 12940(a); (2) Failure to Prevent Discrimination in violation of California Government Code section 12940(k); (3) Failure to Provide a Reasonable Accommodation in violation of California Government Code section 12940(m); (4) Failure to Provide a Timely, Good Faith, Interactive Process in violation of California Government Code section 12940(n); (5) Retaliation in violation of California Government Code section 12940(h); (6) Retaliation and Wrongful Termination in Violation of Public Policy; and (7) Unfair Business Practices in violation of California Business and Professions Code section 17200, *et seq*.  *Id.* ¶¶ 70–139.

8.     According to the Complaint, Plaintiff and the putative class members are entitled to, among other things, damages for the loss of past and future earnings, pain and suffering, emotional distress, loss of reputation, unpaid wages and expenses, punitive damages, injunctive relief, interest, and attorneys' fees and costs.  Compl., Prayer for Relief.

## II.     THIS COURT HAS ORIGINAL JURISDICTION UNDER CAFA

9.     CAFA provides that a class action against a non-governmental entity may be removed to federal court if: (1) the number of putative class members is 100 or greater; (2) the

aggregate amount placed in controversy by the Complaint exceeds $5 million, excluding interest and costs; and (3) any member of the class of plaintiffs is a citizen of a state different from any defendant.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453.  The Supreme Court has explained that CAFA's provisions are to be read broadly and that "no antiremoval presumption attends cases invoking CAFA."  *Dart Cherokee Basin Operating Co., LLC* v. *Owens*, 574 U.S. 81, 89 (2014) (citing S. Rep. No. 109–14, at 43 (2005)).

10. Amazon denies any liability in this case, both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of the putative class.  Amazon expressly reserves all rights to contest the merits of Plaintiff's allegations, including that this action may properly proceed as a class action.[1]  Amazon further reserves all rights to oppose class certification and believes that class or representative treatment is inappropriate under these circumstances, in part because there are innumerable material differences between the experiences of Plaintiff and the putative class members she seeks to represent.  Such differences include, but are not limited to, fact-driven determinations regarding an individual's alleged disability, qualifications, and job duties as well as the interactive process and the type and reasonableness of any requested accommodations.[2]  Nevertheless, as discussed below, exclusively for purposes of the jurisdictional

---

[1] Amazon denies that liability or damages can be established either as to Plaintiff or on a class-wide basis.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.  *See Ibarra* v. *Manheim Invs., Inc*., 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("[W]hen defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings . . . . because [defendants] are not stipulating to damages suffered, but only estimating the damages that are in controversy.").

[2] California federal courts have previously recognized that FEHA claims similar to the ones brought in this action are ill-suited for class resolution because of the highly individualized nature of the claims.  *See Kittel* v. *City of Oxnard*, No. CV-17-6709-MWF (GJSx), 2018 WL 6004524, at *9 (C.D. Cal. Feb. 20, 2018) (finding that "[t]here [were] simply too many individualized inquiries necessary for [p]laintiff to possibly meet the commonality and typicality requirements of Rule 23" in a proposed disability discrimination class action).

requirements for removal, the allegations in the Complaint identify a putative class of more than 100 members and put in controversy an aggregate amount that exceeds $5 million.

**A.     The Aggregate Number of Putative Class Members is 100 or Greater**

11.     Plaintiff seeks to certify a class of "[a]ll current and/or former non-exempt employees that worked for Defendant[] in California within four (4) years prior to the filing of this Complaint and had a disability or medical condition or were otherwise considered disabled under FEHA."  Compl. ¶ 64.

12.     There can be no question that Plaintiff's proposed class exceeds 100 members.  To begin with, Plaintiff alleges that "the class is estimated to be greater than one hundred (100) individuals."  *Id.* ¶ 68(a).

13.     The proposed class, however, is much larger than 100 individuals.  For just 12 months during the alleged four-year class period, from October 15, 2020 through October 14, 2021, Amazon's records show that at least 11,341[3] non-exempt employees in California with the same job title as Plaintiff, FC Associate I, requested accommodations based on claimed disabilities or medical conditions.  Declaration of Harjit Randhawa in Support of Defendant's Notice of Removal ("Randhawa Decl.") ¶ 3.b.  This data demonstrates that the proposed class well exceeds 100 members.

14.     Amazon expressly reserves all rights to oppose class certification and denies that this action meets the Federal Rule of Civil Procedure 23 requirements for class certification.  But, even using conservative estimates, the putative class as defined in the Complaint easily consists of more than 100 members, the number of members required for CAFA removal.  28 U.S.C. § 1332(d)(5)(B).

---

[3] Amazon does not concede that each of these 11,341 employees who requested accommodations would be able to establish that they qualify as having a disability or medical condition under FEHA; individual inquiries would be required for each employee.

**B.      The Parties Have Minimal Diversity Under CAFA**

15.      CAFA requires minimal diversity.  That is, at least one putative class member must be a citizen of a state different from any one defendant.  28 U.S.C. §1332(d)(2)(A).

16.      Plaintiff alleges that she "is, and at all relevant times was, a citizen of the state of California."[4]  Compl. ¶ 6.  Thus, at least one putative class member, the named Plaintiff, is a citizen of California.

17.      As a limited liability corporation, Amazon is an unincorporated association and is thus a citizen of the states under whose laws it is organized and where it has its principal place of business.  *See* 28 U.S.C. § 1332(d)(10); *Ferrell* v. *Express Check Advance of S.C., LLC*, 591 F.3d 698, 699–705 (4th Cir. 2010); *see also Jack* v. *Ring, LLC*, __ F. Supp. 3d __, No. 21-cv-00544-HSG, 2021 WL 3510291, at *3 (N.D. Cal. Aug. 10, 2021) (explaining that "it seems likely that the Ninth Circuit would consider an LLC an unincorporated association under 28 U.S.C. § 1332(d)(10)" (citing *Davis* v. *HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) (Kleinfeld, J., concurring))). The "principal place of business" is where a business entity's "officers direct, control, and coordinate" its activities.  *Hertz Corp.* v. *Friend*, 559 U.S. 77, 92 (2010); *see Davis*, 577 F.3d at 1032 n.16 (Kleinfeld, J., concurring) (explaining that the Ninth Circuit determines the principal place of business the same way for corporations and unincorporated associations).  A business entity's principal place of business will normally be its headquarters, "provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'"  *Hertz Corp.*, 559 U.S. at 93.  Amazon is organized under

---

[4] An individual is a citizen of the state where she is domiciled.  *Kanter* v. *Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  *Id.*  Consistent with the Complaint's assertion that Plaintiff is a citizen of California, Plaintiff was employed at an Amazon facility in California and pleaded a desire to remain working there.  *See, e.g.*, Compl. ¶¶ 17, 46, 103.

the laws of the State of Delaware and has its headquarters in the State of Washington, from where

Amazon's officers direct, control, and coordinate its activities.  Declaration of Zane Brown in

Support of Defendant's Notice of Removal ("Z. Brown Decl.") ¶ 2.[5]  Because named Plaintiff is a

citizen of a state different from at least one defendant, within the meaning of 28 U.S.C.

§ 1332(d)(2)(A), CAFA's diversity of citizenship requirement is satisfied in this action.[6]

### C.    The Amount in Controversy Exceeds $5 Million

18.    Under CAFA, the claims of the individual class members are aggregated to

determine if the amount in controversy exceeds the required "sum or value of $5,000,000,

exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).

19.    "[A] defendant's notice of removal need include only a plausible allegation that the

amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 574 U.S. at 89; *see*

*also Salter* v. *Quality Carriers, Inc.*, 974 F.3d 959, 962 (9th Cir. 2020) ("[A] removing

---

[5] Although Plaintiff's unverified Complaint alleges that Amazon is a California corporation and a California limited liability company, Plaintiff is simply wrong.  Compl. ¶ 8.  Federal courts have held that if a plaintiff misidentifies a defendant's citizenship, the defendant is in the best position to know its residence for diversity purposes.  *See Day* v. *Zimmer, Inc.*, 636 F. Supp. 451, 453 (N.D.N.Y. 1986) ("[E]ven if [plaintiff's filing] is wrong, obviously defendant is in the best position to know its residency for diversity purposes.") (cited with approval in *Contreras* v. *BMW of N. Am., LLC*, No. CV 18-8014 PA (MAAx), 2018 WL 4849107, at *2 (C.D. Cal. Oct. 3, 2018)).  Put simply, "[a] defendant is presumed to know the facts surrounding its own citizenship."  *Contreras*, 2018 WL 4849107, at *2.  Furthermore, Zane Brown's Declaration under oath setting forth the facts of Amazon's state of organization and principal place of business satisfies the preponderance of the evidence standard for proving citizenship for diversity purposes.  *Cf. Garza* v. *Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 914 (N.D. Cal. 2016) (holding that the removing party had not proven diversity of citizenship by a preponderance of the evidence because it had *failed to submit a declaration* from the individual whose citizenship was at issue).

[6] Amazon contends that its citizenship is properly determined under 28 U.S.C. § 1332(d)(10) for the purposes of this action, but recognizes that in other contexts, courts evaluate a limited liability company's citizenship by determining "every state of which its owners/members are citizens." *3123 SMB, LLC* v. *Horn*, 880 F.3d 461, 465 (9th Cir. 2018) (quoting *Johnson* v. *Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)).  Such analysis is not required under CAFA, but even under this test, CAFA's diversity of citizenship requirement is satisfied here.  Amazon's sole member is Amazon.com, Inc., which is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of Washington.  Z. Brown Decl. ¶ 2.

defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements." (quoting *Arias* v. *Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal quotations omitted))).

20.    To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on reasonable assumptions.  *LaCross* v. *Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).  "An assumption may be reasonable if it is founded on the allegations of the complaint."  *Arias*, 936 F.3d at 925.  Further, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be [less than $5 million]."  *Id.* at 927.  The amount in controversy is not an assessment of a defendant's potential liability, but instead "reflects the *maximum* recovery the plaintiff could reasonably recover."  *Id*.

21.    Moreover, "in assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'"  *Campbell* v. *Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr.* v. *Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  This Court's inquiry therefore focuses on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe."  *Korn* v. *Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting *Rippee* v. *Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

22.    Although the Complaint is silent as to the amount of damages sought, it is apparent from the allegations that, given the size of the putative class and the nature of the damages sought, the amount in controversy easily exceeds the jurisdictional threshold.

23.    Although a removal notice does not need to rely on evidentiary submissions, the calculations relating to the potential amount in controversy presented below rely on the attached Declaration of Dr. Peter Nickerson, a well-qualified statistician who used reliable data and

methods to estimate the lost wage damages resulting from Plaintiff's allegations for just 12 months of the class period.

24.     Amazon reserves the right to present additional evidence to support the amount placed in controversy by Plaintiff's claims, should Plaintiff challenge whether the jurisdictional amount in controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests the truth of the [removing party's] factual allegations, usually by introducing evidence outside the pleadings," requires the removing party to "support [the] jurisdictional allegations with competent proof" (quotations and citations omitted)).  When a removing defendant plausibly alleges a basis for federal court jurisdiction, "a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924.

25.     Here, as discussed below, Plaintiff's request for lost wages alone plausibly puts more than $5 million in controversy.  Amazon has therefore met its burden to establish that CAFA jurisdiction exists over this action.

**1.  <u>Plaintiff's Allegations Regarding Lost Wages Alone Establish that the Amount in Controversy Exceeds $5 Million</u>**

26.     Plaintiff asserts claims on behalf of herself and the putative class for the loss of past and future earnings as a result of purported violations of California Government Code section 12940.  Compl. ¶¶ 88, 113, Prayer for Relief.

27.     As discussed above, in the 12 month period from October 15, 2020 to October 14, 2021, Amazon's records show that at least 11,341 non-exempt employees in California with the same job title as Plaintiff, FC Associate I, made accommodation requests based on claimed disabilities or medical conditions.  Randhawa Decl. ¶ 3.b.

28.     Plaintiff alleges that she was originally scheduled to work 30 hours per week, but requested that Amazon limit her hours to 20 per week as an accommodation.  Compl. ¶¶ 19, 47.  Plaintiff's hourly wage was $15.00 per hour with an $.085 per hour shift differential.  *Id.* ¶ 17; Randhawa Decl. ¶ 3.a.

29.     For the purposes of estimating the lost wage damages of the class, we will assume, as the Complaint alleges, that other putative class members are similarly situated to Plaintiff and therefore worked only 20 hours per week at $15 per hour.  Compl. ¶ 62.  Such a part-time schedule assumption is quite conservative given that Plaintiff's requested four to five hour shifts and cap of 20 hours per week, *id.* ¶ 47, are almost certainly lower than the average for the proposed class, given that many of those employees likely worked full-time.

#### i.   Alleged Pre-Separation Lost Wages

30.     As for alleged pre-separation lost wages, Plaintiff alleges that she "was suspended without pay" beginning on November 23, 2020.  Compl. ¶ 34.  Plaintiff claims that she worked one shift in the nearly three-week period between November 23 and the date of her alleged constructive termination on December 11, 2020.  *See id.* ¶ 53.  Based on Plaintiff's allegation that she was suspended without pay for nearly three weeks and without admitting that Plaintiff's claims have any merit, it is conservative to assume at least two weeks (or ten working days) of pre-separation lost wages.  Conservatively assuming that Plaintiff never received a shift differential, pre-separation lost wages for Plaintiff would amount to $600 (2 weeks x 20 hours per week x $15/hour).  Nickerson Decl. ¶ 8.

31.     Plaintiff alleges that "Defendant[], as a matter of policy, forced and/or pushed its employees to take unpaid leave of absences [sic] instead of granting accommodations."  Compl. ¶ 59.  This allegation is most relevant to two of the alleged subclasses in the Complaint, subclass 3 (alleged failure to provide reasonable accommodations) and subclass 4 (alleged failure to provide

a timely, good faith interactive process), see *id.* ¶ 65, and we have accordingly focused our lost

wage calculations in this section on those subclasses.  For the Complaint's other proposed

subclasses, which may include plaintiffs who have never requested accommodations, the claims

for pre-separation lost wages would ostensibly be based on different theories.  Any such claims are

not accounted for in these calculations, but would further increase the amount in controversy.

32.     A putative class member who was "similarly situated" to Plaintiff (i.e., working 20

hours per week at $15 per hour) would also claim to be entitled to damages of $600 for two weeks

of pre-separation lost wages.  Nickerson Decl. ¶ 9.  During the 12 month period on which our

damages estimate is based (October 15, 2020 to October 14, 2021), there were at least 11,341 non-

exempt Amazon employees in California with the same job title as Plaintiff who requested

accommodations.  *Id.* ¶ 7.  For the purpose of conducting a conservative damages analysis, and

without admitting that Plaintiff's claims have any merit, we will assume that only 10% of these

11,341 employees, or 1,134 employees, might be entitled to pre-separation lost wages under

Plaintiff's theory of the case.  Accordingly, the amount in controversy solely for pre-separation

lost wages during the 12 month period can be conservatively estimated at **$680,400** ($600 x 1,134

employees).  *Id.* ¶ 10.

### ii.   Alleged Post-Separation Lost Wages

33.     Plaintiff alleges that she was constructively terminated by Amazon on December

11, 2020.  Compl. ¶ 57.  Her request for lost past and future wages thus would include pay for the

time she spent unemployed while looking for a new job.  The median duration of unemployment

between the period of November 2020 and August 2021 was approximately 16 weeks.  Nickerson

Decl. ¶ 11.  Further, people with disabilities tend to have a more difficult time securing

employment and have an unemployment rate nearly twice that of non-disabled people.  *Id.*  Based

on these facts, we can reasonably estimate that Plaintiff's demand for lost wages may add to the

amount in controversy 32 weeks of post-separation wages, representing the time between her alleged constructive termination and the estimated date by which she may have been able to find another job.  *Id.*  Given that Plaintiff's wages would have amounted to at least $300 per week on her desired reduced schedule, 32 weeks of post-separation lost wages would equal $9,600.  *Id.*  Of course, if Plaintiff remains unemployed, her alleged post-separation lost wages could be higher.

34.    Plaintiff alleges that Amazon "retaliated against [her] and others similarly situated for exercising rights under [FEHA], for insisting that their medical needs be accommodated, and/or for complaining about, reporting, or perceivably reporting Defendants' discriminatory acts, by . . . terminating, or constructively terminating the employment of Plaintiff and others similarly situated."  Compl. ¶ 60.  This allegation is most relevant to alleged subclasses 5 and 6 (retaliation in violation of FEHA and public policy).  *See id.* ¶ 65.

35.    Of the at least 11,341 non-exempt employees in California with the job title FC Associate I who requested accommodations between October 15, 2020 and October 14, 2021, Amazon's records show that 5,755 of them are no longer employed by the company (meaning they resigned or were terminated).  Randhawa Decl. ¶ 3.b; Nickerson Decl. ¶ 7.  Under Plaintiff's theory of the case, these 5,755 employees are "similarly situated" to Plaintiff.

36.    To estimate the potential post-separation lost wage claims of these 5,755 employees, we assume that each of them, like Plaintiff, would have claims based on working 20 hours per week at $15 per hour.  We have used the same estimate of 32 weeks of unemployment for these employees as for the Plaintiff, because employees who left Amazon between October 15, 2020 and October 14, 2021 would have faced a similar labor market as Plaintiff.  Nickerson Decl. ¶ 12.  Like Plaintiff, such employees could also claim to be entitled to $9,600 in post-separation damages ($15 per hour x 20 hours a week x 32 weeks).  *Id.*  For the purpose of conducting a conservative damages analysis, and without admitting that Plaintiff's claims have any merit, we

will assume that only 10% of the 5,755 employees at issue, or 576 employees, might be entitled to post-separation lost wages under Plaintiff's theory of the case. Accordingly, the amount in controversy for post-separation lost wages for these 576 employees can be conservatively estimated at **$5,529,600** ($9,600 x 576 employees).  *Id.* ¶ 13.

37.     The analysis above demonstrates that the allegations in the Complaint relating to past lost wage claims by putative class members for just 12 months out of the four-year class period put more than $6 million in controversy, exceeding CAFA's $5 million threshold.

| | |
|---|---|
| Alleged pre-separation lost wages assuming only 10% of non-exempt employees who requested accommodations in a 12 month period could prove damages ($600 x 1,134 employees) | $680,400 |
| Alleged post-separation lost wages assuming only 10% of non-exempt employees who requested accommodations in a 12 month period could prove damages ($9,600 x 576 employees) | $5,529,600 |
| **Amount in controversy for past lost wages, based on 12 months of accommodation request data and Plaintiff's allegations:** | **$6,210,000** |

38.     Because the calculations above considered only the non-exempt employees who shared Plaintiff's job title of FC Associate I and requested accommodations within a 12 month period, the total amount in controversy at issue for past lost wages for all non-exempt employees in California for the entire four-year class period would be a multiple of our estimate for these 12 months.

**2.     Plaintiff's Requests for Attorneys' Fees and Punitive Damages Place Additional Amounts in Controversy, Further Exceeding the CAFA Threshold**

39.     Plaintiff also asks for an award of attorneys' fees and punitive damages.  *See* Compl. ¶¶ 14, 80, 81, 90, 91, 97, 98, 104, 105, 115, 116, 123, 124; Prayer for Relief.

40.     Claims for attorneys' fees are properly included in determining the amount in controversy.  *Arias*, 936 F.3d at 922; *see also* Cal. Gov't Code § 12965(b) (allowing for the recovery of attorneys' fees for prevailing plaintiffs in FEHA actions); Compl. ¶¶ 81, 91, 98, 105, 116, 124; Prayer for Relief (asking to be awarded attorneys' fees).

41.     In determining how much in prospective attorneys' fees to include in the amount in controversy, courts in the Ninth Circuit have looked to previous fee awards to the plaintiffs' attorneys and to the plaintiffs' attorneys' hourly rates. *See, e.g.*, *Castillo* v. *Trinity Servs. Grp., Inc.*, No. 1:19-CV-01013-DAD-EPG, 2020 WL3819415, at *8 (E.D. Cal. July 8, 2020) (providing counsel's hourly rates and anticipated time expenditures as examples of information from which an estimate of attorneys' fees could be calculated); *Gonzalez* v. *Comenity Bank*, No. 1:19-CV-00348-AWI-EPG, 2019 WL 5304925, at *10–*11 (E.D. Cal. Oct. 21, 2019) (finding it more likely than not that plaintiff's counsel would accrue sufficient attorneys' fees to exceed the amount in controversy requirement based on the local prevailing hourly rate and estimated number of hours needed to pursue the claim); *Vasquez* v. *RSI Home Prods., Inc.*, No. 8:20-CV-01494-JWH-JDEx, 2020 WL 6778772, at *10 (C.D. Cal. Nov. 12, 2020) (finding that defendant had provided proof of the reasonableness of its 25% rate for estimating attorneys' fees by citing two previous cases in which plaintiff's counsel received fee awards exceeding 25%).

42.     While there is no per se rule in the Ninth Circuit regarding the rate of attorneys' fees to be included in the amount in controversy, courts in this Circuit have repeatedly approved a 25% rate as reasonable. *See Vasquez*, 2020 WL 6778772, at *10 (collecting cases).

43.     In previous employment class actions, Plaintiff's attorneys, Christian Petronelli and Dean S. Ho, have taken 33% of the class recovery in attorneys' fees. *See Tarver* v. *Integrated Airline Servs., Inc.*, Nos. BCS596694, BC623647, 2017 WL 7737148, at *2 (Cal. Super. Ct. Oct. 16, 2017) (court approving requested 33% fee award to team including Plaintiff's attorneys in a wage and hour class action) and Memorandum of Points & Authorities in Support of Motion for Final Approval of Class Action Settlement, *Tarver* v. *Integrated Airline Servs., Inc.*, No. BCS596694 (Cal. Super. Ct. 2017), 2017 WL 7660980, at *2 (filing by Plaintiff's attorneys seeking the approved award of attorneys' fees in the amount of $733,333.33 out of a $2.2 million

settlement); *Cash* v. *Smart-Professionals, LLC*, Nos. JCCP4871 / RG16800585, at 2 (Cal. Super. Ct. Aug. 20, 2018)[7] (court approving requested 33% fee award to team including Plaintiff's attorneys in a wage and hour class action) and Memorandum of Points & Authorities in Support of Motion for Final Approval of Class Action Settlement, *Cash* v. *Smart-Professionals, LLC*, Nos. JCCP4871 / RG16800585 (Cal. Super. Ct. 2018), 2018 CA Sup. Ct. Motions LEXIS 9076, at *2– *3 (filing by Plaintiff's attorneys seeking the approved award of attorneys' fees in the amount of $495,000 out of a $1.5 million settlement).

44.      Here, Amazon has calculated that just one component of the potential class recovery, the claim for past lost wages, puts more than $6 million in controversy for just 12 months of the class period.  Applying a 25% rate to that one component of the potential class recovery adds an additional **$1,552,500** to that amount.  This would result in Plaintiff's attorneys taking 20% of the total of the past lost wage damages and their fees ($6,210,000 + $1,552,500**)**, a considerably less generous percentage than the 33% Plaintiff's counsel have previously recovered.

45.      Claims for punitive damages are also properly included when measuring the amount in controversy.  *See Simmons* v. *PCT Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (including punitive damages in an amount in controversy calculation for a suit brought under FEHA); *Thompson* v. *Big Lots Stores, Inc.*, No. 1:16-cv-01464-LJO-JLT, 2017 WL 590261, at *4 (E.D. Cal. Feb. 13, 2017) (same).

46.      Punitive damages can be estimated by reference to jury verdicts in cases alleging similar facts.  *See Simmons*, 209 F. Supp. 2d at 1033 (finding that defendant had met its burden of showing the amount in controversy should include a punitive damages award even though "the cited cases involve[d] distinguishable facts"); *Chambers* v. *Penske Truck Leasing Corp.*, No. 1:11-

---

[7] As per Eastern District of California Local Rule 133(i)(3), this court order approving the fee award to Plaintiff's attorneys is appended to this Notice as Exhibit 1.

cv-00381 LJO GSA, 2011 WL 1459155, at *4 (E.D. Cal. Apr. 15, 2011) (same).

47.    Recent jury verdicts for single-plaintiff disability discrimination cases brought under FEHA have included substantial punitive damages awards that have exceeded the compensatory damages.  In *Ramirez* v. *Jack in the Box, Inc*., JVR No. 1908020049, No. BC593619, 2019 WL 3731275 (Cal. Super. Ct. June 11, 2019), the jury awarded $10 million in punitive damages, nearly double the compensatory damage award.  Like the Plaintiff here, Ramirez alleged disability discrimination, failure to engage in the interactive process, harassment, failure to prevent discrimination and harassment, retaliation, and wrongful discharge when she was denied accommodations.  *Id.*  Another recent single-plaintiff disability discrimination case under FEHA resulted in a jury award of punitive damages four times the compensatory damages amount. *Samson* v. *Wells Fargo Bank, N.A.*, JVR No. 2004160018, No. 2:16CV0489, 2020 WL 1890594 (C.D. Cal. Mar. 13, 2020).  Samson alleged disability discrimination and retaliation arising from her firing after disclosing her disability to her supervisor, taking a medical leave, and requesting accommodations.  *Id*.

48.    Based on recent jury verdicts and without admitting that Plaintiff's claims have any merit, punitive damages for disability discrimination cases can easily equal compensatory damages, which have been estimated as **$6,210,000** for past lost wages for claims stemming from 12 months of the four-year class period.

49.    In sum, with a putative class of many more than 100 members, minimal diversity of citizenship, and an amount in controversy well exceeding $5 million, the removal requirements under CAFA are fully satisfied.[8]

---

[8] Amazon reserves the right to supplement or provide the Court with additional briefing or information as necessary to appropriately assess CAFA's jurisdictional requirements or traditional diversity requirements with respect to the named Plaintiff.  *See Kanter*, 265 F.3d at 858 (noting that a party may "cure[] its defective allegations . . . by amending its notice of

### III.  **REMOVAL SATISFIES ALL OTHER REQUIREMENTS UNDER 28 U.S.C. § 1446**

50.  **Timeliness**.  Removal is timely under 28 U.S.C. § 1446(b).  According to the proof of service filed December 8, 2021 by Plaintiff with the Kern County Superior Court, Plaintiff served Amazon through its registered agent for service on November 23, 2021.  Because this Notice of Removal is filed within 30 days of service of the Summons and Complaint, it is timely under 28 U.S.C. §§ 1446(b)(1) and 1453(b).  *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

51.  **No CAFA Exclusions**.  This action does not fall within any exclusion to removal jurisdiction recognized by 28 U.S.C. § 1332(d) because Amazon is not a citizen of California, the state in which this action was filed, and no other exclusion applies.

52.  **Venue**.  Venue is proper in the United States District Court for the Eastern District of California because Plaintiff filed her Complaint in the Superior Court of the State of California, County of Kern.  28 U.S.C. §§ 84(b), 1446(a); E.D. Cal. R. 120(d).

53.  **State Court Action**.  Pursuant 28 U.S.C. §1446(a), true and correct copies of all "process, pleadings, and orders served" upon Amazon as well as other documents entered in the state court action are filed concurrently with this Notice of Removal as exhibits to the Declaration of Walter F. Brown.

54.  **Notice**.  Amazon will promptly serve this Notice of Removal on Plaintiff and file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for the County of Kern, where this action is pending, as required by 28 U.S.C. § 1446(d).

---

removal"); *Acad. of Country Music* v. *Cont'l Cas. Co.*, 991 F.3d 1059, 1069 (9th Cir. 2021) ("[T]he district court erred as a matter of law in requiring that the notice of removal 'prove' the amount in controversy and then failed to follow Supreme Court and Ninth Circuit precedent by refusing to allow [defendant] to supplement its notice of removal").

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, Amazon requests that this action be removed to the United States District Court for the Eastern District of California.  If any question arises as to the propriety of the removal of this action, Amazon requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.


Dated:  December 22, 2021                    Respectfully Submitted,


                                             By:  */s/ Walter F. Brown*
                                                  Walter F. Brown
                                                  Liza M. Velazquez
                                                  David W. Brown
                                                  PAUL, WEISS, RIFKIND, WHARTON
                                                  & GARRISON LLP

                                                  Attorneys for Defendant
                                                  AMAZON.COM SERVICES, LLC

# EXHIBIT 1

Exhibit 1
Page 19

ORIGINAL

1  CHRISTIAN J. PETRONELLI, SBN 284522
   christian@employees-lawyer.com
2  JULIA M. DAMRON, SBN 301502
   julia@employees-lawyer.com
3  PETRONELLI & HO LLP
   295 Redondo Ave., Suite 201
4  Long Beach, California 90803
   Telephone: (888) 855-3670
5  Facsimile: (888) 449-9675

6  ABRAHAM MATHEW, SBN 181110
   abraham@mathewandgeorge.com
7  JACOB GEORGE, SBN 213612
   jacob@mathewandgeorge.com
8  SANG J PARK, SBN 232956
   sang@mathewandgeorge.com
9  MATHEW & GEORGE
   500 South Grand Avenue, Suite 1490
10 Los Angeles, California 90071
   Telephone:   (310) 478-4349
11 Fax:          (310) 478-9580

12 (Additional Counsel Below)

13           SUPERIOR COURT OF THE STATE OF CALIFORNIA

14              FOR THE COUNTY OF LOS ANGELES

**FILED**
Superior Court of California
County of Los Angeles

AUG 20 2018

Sheri R. Carter, Executive Officer/Clerk
By _____ Deputy
     Marisela Fregoso

**BY FAX**

15

16 Coordination Proceeding

17 Special Title (Rule 3.550)

18 COSTCO WAGE AND HOUR CASES.

19

20 LOREN CASH and ARRIANE
   HENRYHAND, on behalf of themselves and
21 all others similarly situated,

22           Plaintiffs,

23

24 vs.

25 SMART-PROFESSIONALS, LLC, a Utah
   limited liability corporation; COSTCO
26 WHOLESALE CORPORATION, a
   Washington corporation; and DOES 1
27 through 50, inclusive,

28           Defendants.

Case No.: JCCP4871 / RG16800585

Assigned for all purposes to:
Hon. Elihu M. Berle
Dept. 6 (Spring Street Courthouse)

CLASS ACTION

**[PROPOSED] ORDER GRANTING
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND
ATTORNEY'S FEES, COSTS, AND CLASS
REPRESENTATIVE ENHANCEMENT
PAYMENT**

**RECEIVED**
LOS ANGELES SUPERIOR COURT

AUG 13 2018

R. NAZARYAN

PETRONELLI & HO LLP
295 REDONDO AVENUE, SUITE 201
LONG BEACH, CA 90803

[PROPOSED] ORDER

47994610v.1

Exhibit 1
Page 20

1   SHAUN SETAREH, SBN 204514
    *shaun@setarehlaw.com*
2   THOMAS SEGAL, SBN 222791
    *thomas@setarehlaw.com*
3   SETAREH LAW GROUP
    9454 Wilshire Boulevard, Suite 907
4   Beverly Hills, California 90212
    Telephone:   (310) 888-7771
5   Fax:         (310) 888-0109

6   Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETRONELLI & HO LLP
295 REDONDO AVENUE, SUITE 201
LONG BEACH, CA 90803

[PROPOSED] ORDER

Exhibit 1
Page 21

# ORDER

On August 20, 2018, the Court conducted a hearing on Plaintiffs' unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorney's Fees, Costs, and Class Representative Enhancement Payment ("Motions").

The Court considered the Motion papers, and GOOD CAUSE appearing, IT IS HEREBY ORDERED that the Motions are GRANTED as follows:

1.      The Court gives Final Approval to the Settlement as fair, reasonable, and adequate, and consistent and in compliance with all requirements of California law, as to, and in the best interest of, each of the Parties and the members of the Class, and directs the Parties and their counsel to implement and consummate the Settlement Agreement in accordance with its terms and provisions. The relief with respect to the Class is appropriate as to the individual members of the Class and as a whole.

2.      The Court finds that the notice program implemented pursuant to the Settlement Agreement (i) constituted the best practicable notice, (ii) was reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the Litigation, their right to object or exclude themselves from the proposed Settlement, and to appear at the Final Approval Hearing, and their right to seek monetary and other relief, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice, and (iv) met all applicable requirements of due process and under California law.

3.      Solely for the purposes of effectuating the Settlement, this Court has concluded that Class certification is appropriate and hereby certifies the Class defined below (and in the Settlement Agreement) and further concludes that this definition is sufficient for purposes of California Rules of Court 3.765(a) and 3.771 and that the Settlement Agreement is binding on all Class Members of the classes set forth in the Settlement Agreement (and as defined below):

Settlement Class:

All persons whom Defendant Smart Professionals retained to work as a roadshow representative at any Costco warehouse in California at any time from January 19, 2012 through March 7, 2018.

PETRONELLI & HO LLP
295 REDONDO AVENUE, SUITE 201
LONG BEACH, CA 90803

47994610v.1

All persons whom Defendant Smart Professionals retained to work as a roadshow representative at any Costco warehouse in the United States at any time from January 19, 2013 through March 7, 2018.

4.     The Court finds that Plaintiffs and Class Counsel adequately represented the Class for the purpose of entering into and implementing the Settlement and achieved a very good result for the Class.

5.     The Court finds that no objections and 6 requests for exclusion were submitted to the Settlement. *Those excluded are: Kendra Peters, Birgit Keys, Ayden Amoli, Mary Clappison, Felisa McQuirge and Rosaline Andre.*

6.     The Court adjudges that upon the Effective Date Plaintiffs and the Class Members have fully, finally, and conclusively compromised, settled, discharged, dismissed, and released any and all Released Claims as provided in the Settlement Agreement. Nothing in this Final Order nor any aspect of this Settlement is to be offered as evidence of, or construed or deemed as an admission of, liability, culpability, negligence, or wrongdoing on the party of any Defendants or their employees, agents or any related entity. Without limiting the generality of the foregoing, nothing about this Final Order or the settlement shall be offered or construed as an admission or evidence of the propriety or feasibility of certifying a class in this lawsuit or any other action for adversarial, rather than settlement, purposes and nothing herein shall be offered or construed as an admission or evidence of impropriety or wrongdoing by Defendants.

7.     The Court approves the payment to Class Counsel of attorney's fees in the total amount of $495,000.00 to be distributed as follows: $111,375.00 to Petronelli & Ho LLP, $111,375.00 to Mathew & George, and $272,250.00 to Setareh Law Group, and reimbursement of litigation costs in the amount of $31,774.59 to be distributed as follows: $5,109.44 to Petronelli & Ho LLP, $15,217.00 to Mathew & George, and $11,448.15 to Setareh Law Group. The Settlement was carefully and professionally prepared and is in all respects in the interests of the Class. Counsel's very good efforts are reflected in the percentage fee award. The attorney's fees and litigation expenses shall be paid in accordance with the terms of the Settlement. The Parties are to bear their own attorney's fees and costs except as otherwise provided in this

PETRONELLI & HO LLP
295 REDONDO AVENUE, SUITE 201
LONG BEACH, CA 90803

$ 7,500.00

1    paragraph. The Court further approves payment of service awards in an amount of $~~12,500~~ to
$ 7,500.00 .

2    Loren Cash and $~~12,500~~ to Arriane Henryhand in recognition of their services on behalf of the

3    Class in this Action which are in addition to their payment as participating claimants. The

4    service awards shall be paid in accordance with the terms of the Settlement.

5           8.     The Court further approves payment as and for the PAGA recovery in the

6    amount of $75,000.00 of which 75% ($56,250.00) shall be forwarded to the Labor and

7    Workforce Development Agency ("LWDA"), and of which the remaining 25% ($18,750) shall

8    be distributed to the Class as provided in the Settlement Agreement.

9           9.     The Court approves the payment of Claims Administrator's expenses of $30,000

10   from the Gross Settlement Amount to Atticus Administration.

11         10.    The Court approves the payments to Participating Class Members according to

12   the terms set forth in the Settlement and in accordance with the terms of the Settlement. All

13   payroll taxes are to be paid by the Claims Administrator in accordance with the terms of the

14   Settlement Agreement, and paid not later than the time specified by law or agency regulation.

15         11.    The Court in its discretion approves the payment of the amount of any settlement

16   funds from the California Released Claims that has not been claimed, including any uncashed

17   checks and funds not paid because class members did not provide a social security number,

18   pursuant to Code of Civil Procedure section 384 as follows:

19         a.  By **April 22, 2019** , ~~2018~~, the parties shall report to the court the

20            total amount of the Settlement that was actually paid to the class members.

21         b.  **California Class**: After the report is received, the Court will amend this

22            judgment to direct the defendant to pay the unpaid residue or unclaimed or

23            abandoned Class member funds for the Class members for which there remain

24            uncashed checks and the Class Member funds for which the Claims

25            Administrator did not receive Social Security Numbers, plus interest on that sum

26            at the legal rate of interest from the date of entry of the initial judgment, to the

27            Wage Justice Center (a member of The Legal Aid Association of California),

28            located at 3250 Wilshire Blvd., 13th Fl., Los Angeles, California, 90010.  These

PETRONELLI & HO LLP
295 REDONDO AVENUE, SUITE 201
LONG BEACH, CA 90803

47994610v.1

1    funds are to be paid to the Wage Justice Center within 15 days of entry of the

2    Court's Amended Judgment.

3         c.    **Collective Class**: All Collective Member funds for which the Settlement

4              Administrator did not receive Social Security numbers shall be distributed

5              pursuant to the formula in the Settlement.

6         12.   Without affecting the finality of the Final Order for purposes of appeal, the Court

7    reserves jurisdiction over the Parties as to all matters relating to the administration,

8    consummation, enforcement, and interpretation of the terms of the Settlement Agreement and

9    the Final Order and for any other necessary purposes.

10

11        **IT IS SO ORDERED.**

12

13   Dated: August 20, 2018

14                                    Hon. Elihu M. Berle
15                                    Los Angeles County Superior Court Judge

**PROOF OF SERVICE**

<u>Loren Cash and Arriane Henryhand v. Costco Wholesale Corporation, et al.</u>

(Costco Wage & Hour Cases)

Los Angeles County Superior Court, Coordination Proceeding, Case No.: JCCP4871

I, Jennifer Reyes, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 295 Redondo Ave., Suite 201, Long Beach, CA 90803. On August 13, 2018, I served the within document(s):

**[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENT**

☒   **ELECTRONIC SERVICE:  By transmitting the document(s) listed above to counsel of record listed below via Case Anywhere, pursuant to the Court's Order regarding electronic service.**

| | |
|---|---|
| David D. Kadue<br>David D. Jacobson<br>SEYFARTH SHAW LLP<br>2029 Century Park East, Suite 3500<br>Los Angeles, California 90067<br>*Counsel for Defendant Costco Wholesale Corporation* | Jack S. Sholkoff<br>OGLETREE, DEAKINS, et al., P.C.<br>400 South Hope Street, Suite 1200<br>Los Angeles, CA 90071<br>*Counsel for Morgan & Sampson, Inc.* |
| Jacob George<br>Sang J. Park<br>MATHEW & GEORGE<br>500 South Grand Avenue, Suite 1490<br>Los Angeles, CA 90071<br>*Counsel for Plaintiffs* | Shaun Setareh<br>Thomas Segal<br>SETAREH LAW GROUP<br>9454 Wilshire Boulevard, Suite 907<br>Beverly Hills, California 90212<br>*Counsel for Plaintiffs* |

☒   **EXPRESS U.S. MAIL:  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Long Beach, California, with Express Mail postage paid.**

| | |
|---|---|
| Francisco Cabada<br>CABADA & HAMEED LLP<br>1055 East Colorado Blvd., Suite 500<br>Pasadena, CA 91106<br>*Attorneys for Defendant Smart-Professionals, LLC* | |

PETRONELLI & HO LLP
295 REDONDO AVE., SUITE 201
LONG BEACH, CA 90803

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on August 13, 2018, at Long Beach, California.


Jennifer M. Reyes
Paralegal
PETRONELLI & HO LLP