1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 | MICHELLE RIZVANOVIC, *individually and*
*on behalf of all other persons similarly*
12 | *situated*,

Case No. 1:21-cv-01804-JLT-CDB

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS OR MOTION TO STRIKE
PLAINTIFF'S CLASS ALLEGATIONS

13 |             Plaintiff,

14 |     v.

(Doc. 15)

15 | AMAZON.COM SERVICES, LLC, *a*
*California limited liability company*,

16

17 |             Defendant.

18       Michelle Rizvanovic is a former employee at one of Amazon.com Services, LLC's

19 Fulfillment Centers in California.  She brings this putative class action on behalf of herself and

20 others similarly situated, alleging several theories of disability discrimination, retaliation, and

21 wrongful termination, pursuant to California's Fair Employment and Housing Act, Cal. Gov't

22 Code §§ 12940 *et seq.*  Pending is Defendant's Motion to Dismiss, or in the Alternative, Motion

23 to Strike Plaintiff's Class Allegations ("Motion to Dismiss").  (Doc. 15.)  The Court finds the

24 matter suitable for decision without oral argument pursuant to Local Rule 230(g).  For the reasons

25 set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to

26 dismiss.

27    **I.**      **FACTUAL BACKGROUND**

28       In October 2020, Plaintiff began her employment with Amazon as a Fulfillment Associate

at one of Amazon's California Fulfillment Centers.[1]  (Ex. A, Doc. 1-1 at ¶ 17.)  Amazon hired Plaintiff on a "Reduced Time" schedule, consisting of five, six-hour shifts.  (*Id.* at ¶¶ 18–19.)  Plaintiff's job duties included assisting in "processing, packaging, and shipping items," which required Plaintiff to walk and stand for prolonged periods of time.  (*Id.* at ¶¶ 20–21.)  At the start of her hire, Plaintiff informed an Amazon representative in the Human Resources ("HR") Department that she suffers from osteoporosis in her ankles and legs, and has stress fractures in both feet, thereby causing Plaintiff pain when she walks and stands for too long.  (*Id.* at ¶ 21.)  "Plaintiff further explained to [HR] that she would not know how her body was going to react until she performed" her work duties.  (*Id.*)

Around four-to-five hours into her second day of work, Plaintiff felt "unbearable" pain and discomfort in her feet, and at the end of her second shift, felt that she could not perform any overtime work due to the pain.  (*Id.* at ¶ 23.)  At that time, Plaintiff informed HR that she could not work any overtime hours in the future, and Defendant instructed her to submit a doctor's note indicating the "specific restrictions and/or limitations."  (*Id.* at ¶ 23.)  The next day, on October 31, 2020, Plaintiff requested an accommodation via Amazon's online employee portal.  (*Id.* at ¶¶ 23–25.)

On November 3, 2020, Plaintiff's primary care doctor referred her to a podiatrist, whom she consulted on November 5, 2020.  (Doc. 1-1 at ¶¶ 26-27.)  The podiatrist provided her with a note, which stated, "Plaintiff's schedule needed to be limited to six (6) hours of standing and walking per day, no more than twenty-five (25) hours per week, and no standing in place for more

---

[1] Initially, Plaintiff alleges that she worked "for Defendants as an Account Executive."  (Compl., Ex. A, Doc. 1-1 at ¶ 15; Doc. 15-1 at 9.)  The remainder of Plaintiff's Complaint indicates she worked as a Fulfillment Associate.  (*See generally* Doc. 1-1 at 9–19.)  Plaintiff's Opposition also only mentions her role as a Fulfillment Associate as well.  (Doc. 22 at 5, 7, 8.)  The Court presume paragraph 15 is an error, because the crux of her Complaint and FEHA allegations pertain only to her duties as a Fulfillment Associate.  (Doc. 15-1 at 9.)

Plaintiff alleges also that she worked for Amazon starting on November 24, 2020, but she also alleges that "October 30, 2020 . . . was Plaintiff's second day of work[.]"  (Doc. 1-1 at ¶ 22.)  The remainder of the timeline of events in the complaint suggest Plaintiff's start date was in October 2020.

Finally, in multiple instances, Plaintiff uses both "he" and "she" pronouns to refer to herself.  (*Compare* Doc. 1-1 at ¶¶ 97, 114, 115, 123, 139 (all referring to Plaintiff as "he" or "his") *with* Doc. 1-1 at ¶¶ 21–23, 29, 30, 32–58 (all referring to Plaintiff using female pronouns).)  Because Plaintiff's Opposition only refers to Plaintiff using female pronouns, (*see* Doc. 22), and the majority of Plaintiff's Complaint refers to Plaintiff using "she," for the purposes of assessing this motion, the Court will refer to Plaintiff using female pronouns as well.

than fifteen (15) minutes." (*Id*. at ¶ 28.)  Plaintiff provided the note to Amazon on November 9, 2020. (*Id*. at ¶ 29.)  The same day, Amazon responded and indicated that "she would be receiving a phone call in the next few business days." (*Id*.)  However, before this could occur, Plaintiff was exposed to COVID, and Amazon told her to quarantine until November 21, 2020. (*Id*. at ¶ 30.)  While in quarantine, Plaintiff contacted Amazon every work day [sic] and she was "told that her request was being escalated to a manager, but Plaintiff received no response." (*Id*. at ¶ 31.)

Plaintiff reported to work on November 21, 2020, and worked a six-hour shift without an accommodation, which caused pain and swelling in her feet.  (Doc. 1-1 at ¶ 32.)  The next day, Plaintiff again inquired about her requested accommodation, but she did not receive one.  (*Id*. at ¶ 33.)  She worked for five hours, but due to pain, she had to leave early. (*Id*.)  She reiterated her need for an accommodation.  When she reported for work on November 23, 2020, wearing an orthotic boot, she was informed that she was suspended without pay until her request for an accommodation could be processed, to avoid her becoming injured by working without the accommodation. (*Id*. at ¶ 34.)  The same day, Plaintiff filed her FEHA complaint for discrimination based on "disability and medical condition." (*Id*. at ¶ 35.)

The next day on November 24, 2020, Plaintiff "missed call from Yaneisy Belette ("Belette"), who left a message stating she would be Plaintiff's case manager in charge of handling Plaintiff's accommodation request.  (Doc. 1-1 at ¶ 36.)  Though Plaintiff called Belette several times, she did not reach her.  (*Id*.)  On November 26, 2020[2], Plaintiff emailed Belette and reported that she had tried to reach her and that working had caused her feet to be so swollen that she could not care for herself or her child.  (*Id*. at ¶ 37.)  Belette responded by email and reported that Plaintiff's case was being evaluated.  (*Id*.)  Belette also phoned Plaintiff and told her that Plaintiff needed to take a leave of absence while her accommodation request was pending.  (*Id*. at ¶ 38.)  Plaintiff refused and instead indicated that she only needed to be allowed to work not more than four or five hours per day.  (*Id*.)  In response, Amazon placed Plaintiff on an involuntary leave of absence retroactive to November 23, 2020 and continuing through December 14, 2020. (*Id*. at ¶ 39)

---

[2] The Court takes judicial notice that this was Thanksgiving Day in 2020.

On November 28, 2020, Amazon sent Plaintiff an email indicating that Plaintiff had requested the leave of absence and telling her that she needed to submit "another medical packet." (Doc. 1-1 at ¶ 40.)  Plaintiff replied, "stating that she did not request a leave of absence, was fit for work, and the leave of absence needed to be cancelled." (*Id*. at ¶ 40.)  Later that day, Belette contacted Plaintiff and reported that she would be temporarily accommodated by transferring her to a light duty, Social Distancer position.  (*Id*. at ¶ 41.)  This position would require plaintiff to walk throughout the shift and the distance of the fulfillment center and remind workers to socially distance.[3]  (*Id*.)  Once again, Plaintiff reiterated that rather than a different position, she needed to have her shift limited to four or five hours, rather than the six that had been required of her.[4]  (*Id*.)  Belette told her that the temporary assignment would be her job until her accommodation could be determined.  (*Id*.)  Belette told Plaintiff that she needed to provide an updated doctor's note, seemingly to address Plaintiff's statement that she needed her shifts limited to four-to-five hours, which her current doctor's note did not support. (*Id*.)  Plaintiff was instructed to report to work on November 29, 2020 and to bring with her a printed copy of the email indicating that Plaintiff was placed on light duty.  (*Id*. at ¶ 42.)  When she reported for work, however, she was told she was suspended.  (*Id*. at ¶ 43.)

The same or the next day, Plaintiff received another email requesting documentation for Plaintiff's unrequested leave of absence.  (Doc. 1-1 at ¶ 44.)  When Plaintiff responded, she reiterated that she did not want a leave of absence, that she wanted an accommodation and that she "was ready and willing to work." (*Id*. at ¶ 44.)  The same day, Amazon cancelled her leave of absence.  (*Id*. at ¶ 45.)  Later that day, Belette called Plaintiff and berated her for cancelling her leave of absence and warned Plaintiff that "she could lose her job if she did not take a leave of absence." (*Id*. at ¶ 46.)  Belette stated that Plaintiff's disability and medical condition made it unsafe for Plaintiff to work, that Plaintiff was not fit for work, despite Plaintiff repeatedly saying

---

[3] Despite her seeming allegation to the contrary, this temporary position appears consistent with her doctor's note, which did not preclude Plaintiff from walking and limited her to no more than 15 minutes of standing. (Doc. 1-1 at ¶ 28.)

[4] Notably, this was inconsistent with her doctor's note, which precluded her from working more than six hours per shift or more than 25 hours per week and precluded her from standing in place for more than 15 minutes. (Doc. 1-1 at ¶ 28.)

that she was fit.  (*Id.*)  Belette told her that if she didn't take the leave of absence to await the accommodation, this would mean that Plaintiff would go without a paycheck until December 14, 2020.  (*Id.*)

Plaintiff again visited the podiatrist on December 1, 2020, who issued a new note. (Doc. 1-1 at ¶ 47.)  It modified the original note to indicate that she could work four to five hours per shift, up to 20 hours per week, that her shifts could not be on consecutive days and that she could not stand in place for more than 15 minutes.  (*Id.*)  Plaintiff provided it to Amazon the same day. (*Id.*)  Plaintiff's request to return to work that same day was refused because Amazon indicated it needed to evaluate the new note.  (*Id.* at ¶¶ 47-48.)  Consequently, Plaintiff did not report to work.  (*Id.* at 49.)

Nevertheless, on December 3, 2020, she was sent an email indicating that she had missed two shifts and that if she missed a third shift, she would be considered to have abandoned her job. (Doc. 1-1 at 50.)  Plaintiff contacted Amazon and was told that she had to take a leave of absence or "Defendants' system would assume she quit her job." (*Id.*) On December 4, 2020, Plaintiff received another email indicating that she was at risk of losing her job due to abandoning it.  (*Id.* at ¶¶ 52-52.)  Consequently, she reported to work and stayed for 4.5 hours, before leaving due to pain.[5]  (*Id.*)  She reported that she was leaving early to HR, and an HR representative yelled at her for working while Amazon was attempting to issue an accommodation that matched her doctor's note.  (*Id.* at ¶ 53.)  The HR person told Plaintiff not to return to work until the accommodation request could be completed.  (*Id.*)  The next day, "Plaintiff contacted Defendants and explained that she had been instructed not to come to work." (*Id.* at ¶ 54.)

On December 11, 2020, another HR person, Alzaga, contacted Plaintiff and told her that "still waiting for a response from the site" and that Alzaga had "resent the accommodation recommendation today." (Doc. 1-1 at ¶ 55.) Alzaga told Plaintiff that Plaintiff would not receive back pay for the days she was "forced to stay out of work and reprimanded Plaintiff for not having taken a leave of absence.  Alzaga told Plaintiff that she would have been better off

---

[5] Working 4.5 hours was within the limits set forth my Plaintiff's doctor in the revised doctor's note. (Doc. 1-1 at ¶ 47.) In appears that the last shift Plaintiff worked was on November 23, 2020.

1   receiving sixty (60) percent of her pay while out on leave of absence.  Again, Plaintiff disagreed

2   and stated she did not need to take a leave of absence as she was ready, willing, and fit for duty."

3   (Doc. 1-1 at ¶ 55.) Due to the passage of 41 days since Plaintiff first requested the

4   accommodation[6], Plaintiff sent an email telling Amazon she had been constructively discharged.

5   (*Id.* at ¶¶ 57-58.)

## II.   PROCEDURAL HISTORY

7          In November 2021, Plaintiff filed the instant putative class action lawsuit in Kern County

8   Superior Court, asserting six causes of action under FEHA, and one cause of action for unfair

9   business practices, pursuant to California Business and Professions Code §§ 17200, *et seq.*  (Ex.

10  A, Doc. 1-1.)  Thereafter, Defendant removed this action to federal court, pursuant to the Court's

11  jurisdiction under the Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d)).  (Doc. 1.)

12  Defendant then filed its pending Motion to Dismiss (Doc. 15), which the parties fully briefed

13  thereafter.  (Pl.'s Opp'n, Doc. 22; Def.'s Reply, Doc. 23.)  Both parties request the Court take

14  judicial notice of DFEH complaints and right-to-sue letters.  (Doc. 16; Ex. A, Doc. 22-1.)

## III.   LEGAL STANDARD

16   A. Rule 12(b)(6)

17          Pursuant to Rule 12(b)(6), a defendant may move to dismiss a claim in the plaintiff's

18  complaint if the allegation "fail[s] to state a claim upon which relief can be granted."  Fed. R.

19  Civ. P. 12(b)(6).  In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff's

20  complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

21  is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

22  *Twombly*, 550 U.S. 544, 570 (2007)).

23          "At the pleading stage, all allegations of material fact are taken as true and construed in

24  the light most favorable to the non-moving party."  *In re Facebook, Inc. Internet Tracking Litig.*,

25  956 F.3d 589, 601 (9th Cir. 2020).  A claim is facially plausible "when the plaintiff pleads factual

26  content that allows the court to draw the reasonable inference that the defendant is liable for the

27

28  [6]Plaintiff was unavailable to work 12 of these days due to having been exposed to COVID and was in quarantine. (Doc. 1-1 at ¶ 29.)

misconduct alleged." *Iqbal*, 556 U.S. at 678.  As such, the plausibility standard is a "context-specific task that requires the reviewing court to [1] draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and [2] to "'draw all reasonable inferences in favor of the nonmoving party.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773–74 (internal citation and quotation marks omitted) (cleaned up).  Importantly, "[c]onclusory allegations and unreasonable inferences do not provide [] a basis" for determining a plaintiff is entitled to relief. *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted).

Finally, though resolution of a motion to dismiss under Rule 12(b)(6) is normally confined to the allegations stated in the complaint, the Court "may also 'consider [1] materials that are submitted with and attached to the complaint'; [2] judicial notice of matters of public record'; and [3] unattached evidence on which the complaint necessarily relies if:  [a] the complaint refers to the document; [b] the document is central to the plaintiff's claim; and [c] no party questions the authenticity of the document.'" *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011)).  The Court may review such material without converting a motion to dismiss into a motion for summary judgment.  *Harris v. Cnty. of Orange*, 17 F.4th 849, 865 (9th Cir. 2021); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

## IV.   DISCUSSION

Plaintiff's Complaint brings six causes of action under FEHA, and one final cause of action under California's Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.*  (Doc. 1-1 at 19–27.)  As Defendant moves to dismiss all of Plaintiff's claims, the Court addresses each one below.

A.  Disability Discrimination (Cal. Gov't Code § 12940(a))

Plaintiff asserts that Amazon unlawfully discriminated against her based on her disability when:

> Plaintiff and the Class requested a reasonable accommodation, Defendants failed to provide a timely response to the point where Plaintiff and the Class suffered financial hardship, [Amazon] forced Plaintiff and the Class to take leaves of absence without their consent and urged them to take a leave of absence based on threats of termination and coercion of continued benefits, employment, and reduced pay, and/or suspended, constructively terminated her employment, and/or otherwise mistreated Plaintiff based on [her] disability.

(Doc. 1-1 at ¶ 74.) Defendant moves to dismiss this claim, arguing that "Plaintiff has failed to allege any adverse employment action motivated by discriminatory intent[.]" (Doc. 15-1 at 13.) On this point, the Court disagrees, in part, with Defendant.

California courts follow the *McDonnell Douglas* burden-shifting framework for all FEHA discrimination claims, including disability discrimination.  *Price v. Victor Valley Union High Sch. Dist.*, 85 Cal. App. 5th 231, 239 (2022) (citation omitted), *rh'g denied* (Nov. 29, 2022); *Brown v. L.A. Unified Sch. Dist.*, 60 Cal. App. 5th 1092, 1105 (2021).  To succeed on her claim, Plaintiff "has the initial burden of establishing a prima facie case of disability discrimination," which requires that she show "she (1) suffered from a disability or was regarded as suffering from a disability; (2) could perform the essential duties of a job with or without reasonable accommodation; and (3) was subjected to an adverse employment action because of the disability or perceived disability."  *Price*, 85 Cal. App. 5th at 239.  The parties do not appear to dispute the first two elements.  (Doc. 15-1; Doc. 22.)  Accordingly, the Court will only address whether Plaintiff properly pleaded the third element:  whether she suffered an adverse employment action because of her disability.

### i.    Adverse Employment Action

Defendant argues that the complaint fails to demonstrate that Plaintiff suffered an adverse employment action.  (Doc. 15-1 at 13–14 (citing *Brown*, 60 Cal. App. 5th at 1106–07).)  Second, Defendant argues that Plaintiff did not suffer a constructive discharge.  (*Id.* at 14–15.)

### a.   Required Leave of Absence

It is well-established that "if the employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of

absence." *Zamora v. Sec'y Indus. Specialists, Inc.*, 71 Cal. App. 5th 1, 42 (2021); *Wallace v. Cnty. of Stanislaus*, 245 Cal. App. 4th 109, 134 (2016) (quoting Cal. Code Regs., tit. 2, § 10068(c)); *see also Moss v. City and Cnty. of S.F.*, No. 3:22-cv-01252-JSC, 2024 WL 406517, at *10 (N.D. Cal. Feb. 2, 2024) (awaiting publication) ("If an employer can provide an accommodation other than a medical leave, it cannot require an employee to take a leave.") (internal quotation marks and citation omitted).  Requiring an employee to take leave when they can work with a reasonable accommodation constitutes an adverse employment action under § 12940(a) of FEHA.  *See Cervantes v. Transdev Servs., Inc.*, No. 3:20-cv-02528-AJB-KSC, 2021 WL 5513512, at *5 (S.D. Cal. Oct. 4, 2021); *DelGiacco v. Cox Commc'ns, Inc.*, No. SACV 14-0200 DOC(DFMx), 2015 WL 1535260, at *18 (C.D. Cal. Apr. 6, 2015).

In multiple places of her Complaint, Plaintiff represents that she "was able to perform the functions of her job but needed accommodations to her work schedule to minimize and/or prevent aggravation of her medical condition."  (Doc. 1-1 at ¶¶ 24, 38, 41.)  Even still, Amazon prevented Plaintiff from working on several occasions, whether by calling it "leave" or a "suspension." (*Id.* at ¶¶ 34, 38, 39, 40, 41, 44, 46). Plaintiff asserts that she repeatedly requested a reduced shift of four-to-five hours, because this was when the pain and swelling in her feel began.  (*Id.* at ¶¶ 22–23, 38, 41, 47). On the other hand, Plaintiff also seems to allege inconsistently what occurred. She alleges Amazon pressured her to take leave, placed her on leave, placed her on leave but removed her from leave retroactively when she objected and, finally, that Amazon did not place her on leave. (Doc. 1-1 at ¶ 38, 39, 40, 44, 45, 50, 55) Seemingly, Plaintiff is alleging that Amazon wanted her to take a leave, which would have resulted in Plaintiff receiving 60% of her salary during the leave period, while Amazon determined whether Plaintiff's disability could be accommodated, but Plaintiff was never, in fact, placed on leave.[7] Thus, the Court concludes that Plaintiff has not adequately alleged that the Defendant's actions constituted an adverse employment action.

b.  <u>Constructive Discharge</u>

---

[7] If the Court is wrong in this interpretation, this would provide further support as to the lack of clarity of the pleading.

The crux of Plaintiff's FEHA claims center on her allegation that Defendant constructively discharged her from her position after it spent forty-one days delaying her accommodation request, placing her on a leave of absence, and threatening her with termination for failing to take leave.  (Doc. 1-1 at ¶ 57.)  Defendant moves to dismiss Plaintiff's FEHA claims premised on her alleged adverse employment action of constructive discharge.  (Doc. 15-1 at 14–15.)

In *Turner v. Anheuser-Bush, Inc.*, the California Supreme Court concluded that "the standard by which a constructive discharge is determined is an objective one—the question is whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit." 7 Cal. 4th 1238, 1248 (1994) (internal quotation marks and citation omitted).  "The essence of the test is whether, under all the circumstances, the working conditions are so unusually adverse that a reasonable employee in the plaintiff's position would have felt compelled to resign." *Id.* at 1247 (internal quotation marks and citation omitted).  The employer must coerce the employee's resignation, (*id.* at 1248), the conditions must be "sufficiently extraordinary and egregious," (*id.* at 1246), and it falls on the plaintiff to plead and prove "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Id.* at 1251; *see also Atalla v. Rite Aid Corp.*, 89 Cal. App. 5th 294, 319–20 (2023).

As noted above, the Complaint is unclear whether Amazon placed Plaintiff on a paid or unpaid leave of absence or on any leave at all. This inherent contradiction, however, must be resolved before determining whether she suffered a constructive discharge.  *See Arkens v. Cnty. of Sutter*, No. 2:16-cv-00951 WBS KJN, 2016 WL 4001057, at *6 (E.D. Cal. July 25, 2016) ("Plaintiff also does not allege how long he remained on administrative leave or whether it was paid or unpaid, which [is] necessary to determine whether he plausibly alleges constructive termination.") (collecting cases); *see also Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1098 (S.D. Cal. 2020); *Siraj v. Bayar Healthcare LLC*, No. C 09-00233 SI, 2010 WL

889996, at *7 (N.D. Cal. Mar. 8, 2010) (summary judgment context: stating it is "unclear" whether plaintiff suffered constructive discharge when she "no longer receive[d] payment of any kind"); *but see Vasquez v. Franklin Mgmt. Real Est. Fund, Inc.*, 22 Cal. App. 4th 819, 828 (2013) ("[T]he existence of a legal violation within the workplace does not, standing alone, establish that the working conditions are intolerable. . . Nor do deprivations of salary or other economic benefits generally support a constructive discharge claim.") (internal citations omitted).

Notwithstanding these contradictions, the Court cannot determine that Plaintiff plausibly pleaded that Amazon constructively discharged her.  As the California Supreme Court noted, the employer must knowingly or intentionally coerce the resignation, by creating "extraordinary and egregious" working conditions. *Turner*, 7 Cal. 4th at 1246, 1248.  Notably, it was not until December 1—just ten days before her alleged constructive discharge—that Plaintiff submitted a doctor's note that limited her work to "four or five" hours.  Until that time, the doctor permitted work up to six hours per shift and did not limit her walking during that length of shift. (Doc. 1-1 at ¶¶ 28, 47) Thus, it appears that Plaintiff relies primarily on her allegations that Amazon personnel "berate[d] [her] for showing up to work" and sent her abandonment of job notices for failing to take a leave of absence as evidence of the constructive discharge.  (Doc. 1-1 at ¶¶ 50, 53, 57.)

Though "a constructive discharge *may* be found based on a supervisor *constantly* yelling, screaming, intimidating, or disparaging a plaintiff," *Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1259 (2008) (emphases added) (citation omitted), single and isolated instances will not suffice.  *Tomco v. Prada USA Corp.*, 484 F. App'x 99, 100 (9th Cir. 2012) (analyzing FEHA: "a single instance in which a manager yelled at her is not sufficiently intolerable or aggravated so as to compel a reasonable employee to resign"); *Hwang v. Nat'l Tech. and Eng'g Sols. of Sandia, LLC*, No. 20-cv-08551-SK, 2022 WL 3566444, at *8 (N.D. Cal. Aug. 18, 2022) ("A plaintiff must allege that the discriminatory conduct was severe and pervasive, not just offhand comments or isolated incidents"—it must "amount to a continuous pattern before the situation will be deemed intolerable") (internal quotation marks and citations omitted). Plaintiff alleges that her case manager yelled at her on one occasion, and a

11

1  representative from human resources yelled at her on another.  (Doc. 1-1 at ¶¶ 46, 53.)  These two

2  separate, isolated incidents are insufficient to create such intolerable working conditions needed

3  to sustain a constructive discharge claim.  *Tomco*, 484 F. App'x at 100; *Hwang*, 2022 WL

4  3566444, at *8; *accord Arteaga v. Brink's Inc.*, 163 Cal. App. 4th 327, 344 (2008) ("The FEHA

5  addresses discrimination.  It is not a shield against harsh treatment at the workplace," nor does it

6  "guarantee employees a stress-free working environment.") (internal quotation marks and

7  citations omitted). Thus, the allegations of the Complaint do not adequately allege that Plaintiff

8  suffered a constructive discharge.

9                         *ii.*        *Causation*

10        Defendant argues that Plaintiff has "not allege[d] that she was the target of disparate

11  treatment," nor has she alleged that "Amazon had a policy or practice that had a disproportionate

12  effect on her because of her disability" to sustain a disparate impact claim.  (Doc. 15-1 at 14.)

13        Plaintiff alleges that Defendant had "a 'no restrictions' policy on its employees," where

14  "as a matter of policy, [it] forced and/or pushed its employees to take unpaid leave of absences

15  instead of granting accommodations."  (Doc. 1-1 at ¶ 59.)  At the motion to dismiss stage, the

16  Court cannot accept conclusory allegations or unwarranted inferences.  *Coronavirus Reporter v.*

17  *Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023).  Indeed, Plaintiff's own facts do not demonstrate

18  that Defendant had this policy—for Plaintiff or for any of its disabled employees.  Rather,

19  assuming for argument's sake that, in fact she was placed on leave, the allegations of the

20  complaint assert that this was to prevent her from suffering further injury.  (Doc. 1-1 at ¶ 34

21  ("The representative told Plaintiff that she could not come back to work because she could get

22  injured.").  Regardless, Plaintiff's disability discrimination cause of action does not seem to

23  sound in a disparate impact claim but rather a disparate treatment claim.  (*Id.* at ¶ 78 ("Plaintiff

24  and the Class have thereby been subjected to discriminatory treatment and harassment by

25  Defendants because of their disability . . ."), ¶ 80 ("Defendants committed the acts described

26  above deliberately, callously, maliciously, fraudulently and in an oppressive manner . . .").)

27        Following the California Supreme Court's adoption of this framework in *Guz v. Bechtel*

28  *National, Inc.*, 24 Cal. 4th 317, 355 (2000), courts interpret the final element of a disability

1   discrimination claim—causation—as requiring "some other circumstance [that] suggests

2   discriminatory motive" in the disability discrimination context.  *See Brown*, 60 Cal. App. 5th at

3   1105; *see also Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013).  This

4   element requires the plaintiff show that "the disability is a substantial motivating reason for the

5   employer's decision to subject the employee to an adverse employment action."  *Wallace v.*

6   *Cnty. of Stanislaus*, 245 Cal. App. 4th 109, 128, 129 (2016).

7          Plaintiff's Complaint demonstrates that Defendant feared that if Plaintiff continued to

8   work without an accommodation, "she could get injured."  (Doc. 1-1 at ¶¶ 34, 46 ("Belette . . .

9   stated that it was not safe for Plaintiff to work and that Plaintiff was not fit for work"), 53

10  (alleging Human Resources representative "proceeded to yell at Plaintiff that she could not work

11  until Defendant[] issued an accommodation that matched her doctor's note," telling Plaintiff "to

12  not come back until Defendant[] had issued the proper accommodation.").  As the *Wallace* court

13  determined, this is sufficient to satisfy the requisite substantial motivating factor element as a

14  matter of law:

15          The Legislature has declared that the FEHA is intended to protect employees
        'from discrimination due to an actual or perceived physical or mental
16      impairment.' (§ 12926.1, subd. (b).) In addition, the Legislature intended to
        'provide protection when an individual is *erroneously or mistakenly believed* to
17      have any physical or mental condition that limits a major life activity.'
        (§ 12926.1, subd. (d), italics added.) In light of this clear expression of legislative
18      intent, County cannot rely on its mistaken beliefs about Wallace's physical
        condition and safety to claim its reasons were legitimate under California law.
19
20          . . . .

21          It logically follows that the County's perception of Wallace's physical condition
        was a substantial motivating reason for County's decision to place Wallace on a
22      leave of absence . . .the substantial-motivating-reason element . . . is established
        as a matter of law.

23  *Wallace*, 245 Cal. App. 4th at 134. Even still, because the Complaint fails to adequately allege

24  that Amazon forced Plaintiff to take a leave of absence, though precluding her from working on

25  a couple of occasions, Defendant's motion is **GRANTED**.

26      B.   Retaliation (Cal. Gov't Code § 12940(k))

27          Plaintiff's second cause of action brings a claim for retaliation under FEHA.  (Doc. 1-1 at

28  21.)  Defendant moves to dismiss this claim, maintaining that her Complaint fails to allege an

13

1  adverse employment action and fails to state any retaliatory motive.  (Doc. 15-1 at 18.)

2       "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show

3  (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an

4  adverse employment action, and (3) a causal link existed between the protected activity and the

5  employer's action."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (collecting

6  cases).  Once the plaintiff satisfies its burden, the burdens shift to the defendant under the

7  *McDonnell Douglas* framework.  *Id.*

8       Since 2016, a request for a reasonable accommodation constitutes a "protected activity"

9  under FEHA.  *Rodriguez v. Comcast, Inc.*, 789 F. App'x 604, 606 (9th Cir. 2020); *Cenis v.*

10 *WinCo Holdings, Inc.*, No. 1:17-cv-00863-DAD-JLT, 2018 WL 2412324, at *7 (E.D. Cal. May

11 29, 2018), *aff'd*, 787 F. App'x 947 (9th Cir. 2019); *Zamora*, 71 Cal. App. 5th at 63–64.  Plaintiff

12 satisfied the first element when she alleges that she made a request for a reasonable

13 accommodation.  (Doc. 1-1 at ¶ 25.) However, the Court has determined, *supra*, that Plaintiff has

14 failed to adequately allege that she suffered an adverse employment action.  *Zamora*, 71 Cal.

15 App. 5th at 42; *Wallace*, 245 Cal. App. 4th at 134.

16      Finally, like a FEHA discrimination claim, the causation element for a retaliation claim is

17 satisfied if the plaintiff alleges that she "was subjected to an adverse employment action that was

18 substantially motivated by that activity."  *Cotterman v. Jan X-Ray Servs., Inc.*, No. 2:19-cv-

19 01235-MCE-CKD, 2022 WL 815824, at *11 (E.D. Cal. Mar. 17, 2022) (citation omitted);

20 *Khoiny v. Dignity Health*, 76 Cal. App. 5th 390, 408–09 (2022) ("Dr. Khoiny is only required to

21 prove that her gender or retaliation for her complaints was a substantial motivating factor in her

22 termination."); *see also Kelley v. Merle Norman Cosmetics, Inc.*, No. B251445, 2015 WL

23 9584679, at *11 (Cal. Ct. App. Dec. 30, 2015).  For the reasons stated above, Plaintiff has failed

24 to adequately plead this element as well. The Court therefore **GRANTS** Defendants' motion to

25 dismiss Plaintiff's FEHA retaliation claim as well.

26      C.  Failure to Prevent Discrimination (Cal. Gov't Code § 12940(k))

27      Plaintiff brings a failure to prevent discrimination claim against Defendant, alleging that

28 Defendant failed to conduct an adequate investigation into her claim of harassment and

discrimination.  (Doc. 1-1 at 21.)  Defendant moves to dismiss this claim, arguing that Plaintiff "has not alleged facts explaining how Amazon failed to take reasonable steps to prevent any alleged discrimination."  (Doc. 15-1 at 19.)

FEHA prohibits an employer from "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).  A plaintiff seeking to recover on a failure to prevent discrimination claim under FEHA "must establish: (1) Plaintiff was subjected to discrimination, harassment, or retaliation; (2) Defendant failed to take all reasonable steps to prevent discrimination, harassment, or retaliation; and (3) this failure caused plaintiff to suffer injury, damage, loss, or harm."  *Moss*, 2024 WL 406517, at *12 (internal quotation marks and citations omitted); *Ravel v. Hewlett-Packard Enters., Inc.*, 228 F. Supp. 3d 1086, 1098 (E.D. Cal. 2017).  Plaintiff has not sufficiently pleaded the first element by alleging that Defendant placed her on an unrequested, mandatory leave of absence in response to her request for an accommodation.  *Moss*, 2024 WL 406517, at *12.  Defendant maintains that Plaintiff has only pleaded conclusory allegations regarding the second element, citing to *Rubadeau v. M.A. Mortenson Co.* for the proposition that because this claim derives from negligence, Plaintiff must "describe how [Defendant] breached the duty to take reasonable steps to prevent discrimination or harassment."  (Doc. 15-1 at 19); No. 1:13-cv-339 AWI JLT, 2013 WL 3356883, at *14 (E.D. Cal. July 3, 2013).

Plaintiff has pleaded that she repeatedly requested an accommodation to work four-to-five-hour shifts, rather than her original six-hour shift. Notably, however, the first doctor's note limited her to shifts no longer than *six* hours. (Doc. 1-1 at ¶ 28) The second note, which plaintiff produced on December 1, 2021, limited her to working four to five hours. *Id*. at ¶ After the second note, Plaintiff worked one shift and left after 4.5 hours, seemingly, without any repercussions. (Doc. 1-1 at 14) At that time, she took exception to the requirements of the temporary job to which Amazon assigned her as an accommodation, because it required her to walk throughout the distribution facility. However, neither doctor's note precluded her from walking.

Defendant argues that Plaintiff has failed to state, "who was aware of the alleged

discrimination or how Amazon would have known to conduct an investigation." Plaintiff's

Complaint names several Amazon personnel with whom she communicated about her

accommodation requests, such as Yaneisy Belette, Nancy Rowland, and Luis Alzaga.  (Doc. 15-

1 at 19; Doc. 1-1 at ¶¶ 37, 51, 55.)  Though she alleges that she told Belette to stop "bullying"

her into taking a leave of absence, there is no showing that Plaintiff reported that she was

suffering discrimination or harassment. Thus, Defendant's motion to dismiss Plaintiff's failure to

prevent discrimination claim is **GRANTED**.

    D.  <u>Failure to Provide a Reasonable Accommodation (Cal. Gov't Code § 12940(m))</u>

      Plaintiff brings a failure to provide a reasonable accommodation claim under § 12940(m)

of FEHA.  (Doc. 1-1 at 22.)  Defendant moves to dismiss this claim because, as Plaintiff's

Complaint admits, Amazon offered Plaintiff a temporary accommodation as a Social Distancer.

(Doc. 15-1 at 20.)

      "The FEHA requires employers to make reasonable accommodations for employees and

applicants to enable them to perform the essential functions of a position, unless doing so would

produce undue hardship to the employer's operations."  *Zamora*, 71 Cal. App. 5th at 40 (citations

omitted).  Indeed, FEHA places an "affirmative duty" upon employers to make such reasonable

accommodation, and FEHA and DFEH regulations "set forth a nonexhaustive list of possible

accommodations."  *Id.* at 40, 41.  This includes, but is not limited to, transferring the employee,

restructuring the employee's job, "providing a part-time or modified work schedule," paid or

unpaid leave for treatment and recovery, and "reassignment to a vacant position."  *Id.* at 41

(collecting citations).

      Once more, though "[a] leave of absence [ ] may be a reasonable accommodation if, after

the leave, the employee can return to work, with or without further reasonable accommodation,"

it is not a reasonable accommodation to require an employee take a leave of absence if they can

perform their essential duties with a reasonable accommodation.  *Id.* at 42.  If the latter is the

case, "an employer may not require that the employee take a leave of absence" and they will be

liable for this claim.  *Id.*  This is because, in part, a "reasonable accommodation" means "a

modification or adjustment to the workplace that enables the employee to perform the essential

functions of the job held or desired." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 974 (2008).  Thus, if an employee requests a leave of absence to recover from an injury, heals during her leave, and then returns to work to perform her duties, this may constitute a reasonable accommodation.  *Zamora*, 71 Cal. App. 5th at 42.  However, if an employee believes they can adequately perform their duties, but simply requires an accommodation of a part-time schedule, leave is not appropriate.  *Id.*

An employer may temporarily reassign an employee to a different position as a reasonable accommodation if the employee requests it.  *Zamora*, 71 Cal. App. 5th at 41; *Atkins v. City of L.A.*, 8 Cal. App. 5th 696, 721 (2017).  "[T]he employer may violate subdivision (m) of section 12940 if the employer fails to reasonably accommodate that employee by reassigning him or her to a comparable, vacant position whose essential functions the employee can perform."  *Atkins*, 8 Cal. App. 5th at 721.  "The duty to reasonably accommodate a disabled employee is a continuing one that is not exhausted by one effort."  *Id.* at 134 (citation omitted). "A single failure to reasonably accommodate an employee may give rise to liability, despite other efforts at accommodation."  *Id.* (internal quotation marks and citation).  In providing an accommodation, such as temporary reassignment, it must be effective and must give the employee "preferential consideration."  *Weeks v. Union Pac. R.R. Co.*, 137 F. Supp. 3d 1204, 1223 (E.D. Cal. 2015) ("An ineffective accommodation is not a reasonable accommodation."); *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 265 (2000) ("[W]hen reassignment of an existing employee is the issue, the disabled employee is entitled to preferential consideration.").

Plaintiff alleges that Defendant failed to provide her with a reasonable accommodation on two occasions.  First, Defendant required Plaintiff take a mandatory leave of absence, rather than provide her with an accommodation in her current role, working fewer hours in her shifts.  (Doc. 1-1 at ¶¶ 38, 39, 44, 46.)  These allegations are insufficient, as detailed above because the Complaint fails to demonstrate that, in fact, Plaintiff was ever placed on a leave of absence.

Second, Plaintiff's alleges that the reassignment to the "Social Distancer" position was not a proper accommodation because this job "involved walking the length of the fulfillment center throughout the entirety of the shift[.]" (Doc. 1-1 at ¶ 41.)  However, as noted above,

17

neither doctor's note precluded her from walking throughout her shifts. *Id*. at ¶¶ 28, 47. Though the notes limit the length of the shifts, the number of hours to be worked per week and the second note precluded Plaintiff from working on consecutive days, Plaintiff fails to allege that the Social Distancer position breached any of these requirements. Though Plaintiff preferred to continue in her role as a Fulfillment Associate, "removing packages from the assembly line on the dock and placing them on pallets," this is insufficient to demonstrate that the accommodation Amazon offered her was unreasonable. Indeed, it appears that the job of Fulfillment Associate may have required her to stand in place for more than 15 minutes, which was contrary to the doctor's restrictions. Therefore, Defendant's motion to dismiss Plaintiff's failure to provide a reasonable accommodation claim is **GRANTED**.

    E.   Failure to Provide a Timely, Good Faith Interactive Process (Cal. Gov't Code
        § 12940(n))

Plaintiff's final claim sounding in FEHA is for Defendant's alleged failure to provide a timely, good-faith interactive process.  (Doc. 1-1 at 23.)  Defendant moves to dismiss this claim because "Plaintiff's allegations show a back and forth exchange of information with her employer about her medical conditions and requested working conditions," and Plaintiff's allegations show "she did not want to continue waiting for Amazon to address her request." (Doc. 15-1 at 22.)

It is unlawful for an employer to "fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability, or known medical condition."  Cal. Gov't Code § 12940(n). "The employee must initiate the process unless his or her disability and the resulting limitations are obvious.  Once initiated, the employer has *a continuous obligation* to engage in the interactive process in good faith."  *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 347 (2022) (emphasis in original) (internal quotation marks and citation omitted), *rh'g denied* (Oct. 6, 2022).  "The fact that an employer *took some steps to work with an employee* to identify reasonable accommodations does not absolve the employer of liability.  If the employer is

responsible for a later breakdown in the process, it may be held liable." *Id.* (emphasis in original) (cleaned up) (internal quotation marks omitted) (collecting cases); *see also Lin v. Kaiser Found. Hosps.*, 88 Cal. App. 5th 712, 728 (2023) ("The employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation *or* where the employer is aware that the initial accommodation is failing and further accommodation is needed.") (emphasis in original) (internal quotation marks and citation omitted). "Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." *Kaur*, 83 Cal. App. 5th at 347 (internal quotation marks and citation omitted).

Ultimately, both parties are required to engage in a timely, good faith interactive process, and are required to "exchange essential information without delay or obstruction of the process." 2 Cal. Code Regs. § 11069(a). "'A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may [ ] be acting in bad faith.'" *Lewis v. Corecivic of Tenn., LLC*, No. 3:21-cv-01385-JAH-BGS, 2024 WL 1333973, at *17 (S.D. Cal. Mar. 28, 2024) (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). When an employer waits to initiate the process for over one month—spending no time in between to work on a solution—the employer has delayed the interactive process. *See S.F. Bay Area Rapid Transit Dist. v. Fair Emp. and Hous. Comm'n*, No. A119953, 2009 WL 132013, at *9 (Cal. Ct. App. Jan. 21, 2009).[8]

Plaintiff complains that she submitted her accommodation request on October 31, 2020, and submitted her doctor's note via fax on November 9, 2020. (Doc. 1-1 at ¶¶ 25, 28.) Though Defendant allegedly reported they would call her regarding her accommodation request, they never did. (*Id.* at ¶ 29.) "Plaintiff called Defendant['s] disability and leave services department every work day in an attempt to follow up on her accommodation request" while she was in quarantine—only to hear that Defendant "escalated" her request to a manager. (*Id.* at ¶ 31.)

---

[8] The Court "may consider unpublished state decisions, even though such opinion have no precedential value." *Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

Plaintiff complains that she repeatedly called, emailed, and informed Defendant "that she was in severe pain," and that Defendant allegedly responded by urging her to take a leave of absence. Eventually, Plaintiff's case manager, Yaneisy Belette, called Plaintiff and left a voicemail on November 24, 2020 (*Id.* at ¶ 36) and then emailed and phoned Plaintiff two days later saying that her "case was pending" and "that her only option was to take a leave of absence." (*Id.* at ¶¶ 37, 38.)

On November 28, 2020, Defendant temporarily assigned Plaintiff to the role of Social Distancer and asked her to provide a second doctor's note. (*Id.* at ¶ 41.) Defendant continued to request documents for the leave of absence that Plaintiff did not want. (*Id.* at ¶¶ 43–44, 47–48.) When Plaintiff cancelled her leave of absence and reported to work in her role for a four-and-a-half-hour shift, a Human Resources representative yelled at her and told her that her ID badge and timecard were both disabled and locked. (*Id.* at ¶ 53.) Finally, on December 11, 2020, Luisa Alzaga informed Plaintiff that they re-sent her accommodation on that day. (*Id.* at ¶ 56.)

Though it is a close call, the facts as alleged sufficiently allege that Defendant failed to timely, and in good faith, participate in the interactive process. Defendant repeatedly failed to timely and effectively communicate with Plaintiff and allegedly delayed until November 28, 2020 to provide the temporary accommodation. Though Defendant "may request reasonable medical documentation from the employee" when their need for an accommodation is not obvious, 2 Cal. Code Regs. § 11069(c)(2), Plaintiff provided Defendant with two doctor's notes during the one-month period, with two sets of restrictions. Thus, Defendant's motion to dismiss Plaintiff's claim on this ground is **DENIED**.

F. <u>Wrongful Termination and Retaliation[9] in Violation of Public Policy</u>

Plaintiff next brings a cause of action for wrongful termination in violation of public policy, premised on Defendant's aforementioned FEHA violations. (Doc. 1-1 at 26.) As this common law claim is premised on the discharge of the employee, *Bryant v. Lowe's Home Ctrs.,*

---

[9] The Court understands Plaintiff's Complaint as alleging a claim for either wrongful discharge, or alternatively, retaliatory wrongful discharge in violation of public policy. (Doc. 1-1 at ¶ 120.); *e.g.*, *Santillan v. USA Waste of Cal., Inc.*, 853 F.3d 1035, 1046–47 (9th Cir. 2017) (stating elements for "*prima facie* case of retaliatory wrongful termination in violation of public policy"); *Saba v. Unisys Corp.*, 114 F. Supp. 3d 974, 986 (N.D. Cal. 2015) (same).

1    *LLC*, 628 F. Supp. 3d 1036, 1045 (E.D. Cal. 2022), and the Court has previously concluded that

2    Plaintiff failed to adequately allege that Amazon constructively discharged her, the Court

3    **GRANTS** Defendant's motion to dismiss this claim.

4          G.   Unfair Business Practices (Cal. Bus. & Profs. Code §§ 17200, *et seq.*)

5          Finally, Plaintiff's last cause of action sounds in California's Unfair Competition Law ,

6    Cal. Bus. & Prof. Code §§ 17200, *et seq.*, for Defendant's alleged unfair business practices,

7    premised on its alleged FEHA violations.  (Doc. 1-1 at 27.)

8          The UCL defines "unfair competition" to include "any unlawful, unfair or fraudulent

9    business act or practice[.]" Cal. Bus. & Prof. Code § 17200.  "The UCL is not confined to 'anti-

10   competitive' business practices," but rather "extend[s] the meaning of unfair competition to

11   anything that can properly be called a business practice and that at the same time is forbidden by

12   law." *Alch v. Sup. Ct.*, 122 Cal. App. 4th 339, 401 (2004) (internal quotation marks and citation

13   omitted); *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 111 (1972).  The failure to timely

14   and in good faith engage in the interactive process under FEHA is an unlawful employment

15   practice sufficient to state a claim under the UCL.  *Alch*, 122 Cal. App. 4th at 401; *Davis v.*

16   *Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1326 n.17 (2016) ("An employer's business

17   practices concerning its employee are within the scope of the act, including practices that violate

18   FEHA.") (cleaned up) (internal quotation marks and citations omitted). Thus, Defendant's

19   motion to dismiss Plaintiff's UCL claim is **DENIED**.

20         H.   Punitive Damages & Injunctive Relief

21         For her first six claims, Plaintiff requests punitive damages.  (Doc. 1-1 at 7–8, 20, 22–23,

22   26, 27, 30.)  Plaintiff also requests injunctive relief to "retrain[] the Defendant[] . . . from

23   engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in

24   the future." (*Id.* at ¶ 138.)  Defendant moves to dismiss both forms of requested relief.  (Doc. 15-

25   1 at 23–24.)  The Court agrees with Defendant regarding both forms of relief.

26         To begin, when an employee no longer works for the employer, she lacks standing to

27   request injunctive relief, even if her putative Class includes current employees.  *Bayer v. Neiman*

28   *Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) ("But a former employee has no claim for

injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief.") (citation omitted); *Byrd v. Masonite Corp.*, 215 F. Supp. 3d 859, 866 (E.D. Cal. 2016) ("In the context of a putative class action, 'unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.'") (cleaned up) (quoting *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)).  Plaintiff has requested to enjoin Amazon's alleged unfair business practices, without showing she has shown a basis upon which to do so.  (Doc. 1-1 at ¶ 138); *Bayer*, 861 F.3d at 865 ("Given that Bayer is no longer employed with Neiman Marcus and has produced no evidence to suggest he plans to seek employment with Neiman Marcus again, there is no basis upon which to conclude he has a reasonably certain need for prospective relief pertaining to its future employment practices.").  Injunctive relief is therefore improper in this case for both Plaintiff and her proposed Class.  *Hodgers-Durgin*, 199 F.3d at 1045 ("Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question of whether the named plaintiffs are entitled to the injunctive relief they seek.").

Regarding Plaintiffs' request for punitive damages, a plaintiff may not be awarded punitive damages unless they can show the employer "had advance knowledge of the unfitness of [its] employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(b).  If the employer is a corporation, as is the case here, "the advance knowledge and conscious disregard" element "must be on the part of an officer, director, or managing agent of the corporation."  *Id.*

Plaintiffs allege, in conclusory fashion, that Amazon "had advance knowledge of the malicious, fraudulent, and/or oppressive activities of the individual perpetrators whose actions and conduct were authorized, approved, and/or ratified by Defendant['s] directors, officers, and/or managing agents."  (Doc. 1-1 at ¶ 14.)  These are the exact type of conclusory allegations and threadbare recitals of the elements of a cause of action that cannot suffice at the motion to dismiss stage.  *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023)

1  ("Conclusory allegations and unreasonable inferences do not provide such a basis" to plausibly

2  state a claim); *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 713 (9th Cir. 2023) ("Although a reviewing

3  court must accept a complaint's factual allegations as true, the same is not true of legal

4  conclusions, and threadbare recitals of the elements of a cause of action, supported by mere

5  conclusory statements, do not suffice.") (cleaned up) (internal quotation marks and citation

6  omitted). Thus, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's requested forms

7  of injunctive and punitive damages relief.

8      I.   <u>Motion to Dismiss or Strike Class Claims</u>

9        Alternatively, Defendant moves to dismiss or strike Plaintiff's class claims. (Doc. 15 at

10  24.) First, Defendant argues that Plaintiff's "DFEH charge does not include any allegations that

11  could have fairly put Amazon on notice of an investigation into discrimination against a class."

12  (*Id.* at 25.) Thus, Defendant maintains Plaintiff failed to exhaust her administrative remedies to

13  bring a class action. In response, Plaintiff filed an amended DFEH administrative complaint,

14  which indicates that she intends to bring a class action. (Ex. A, Doc. 22-1 at 6 ("Plaintiff . . .

15  brings such claims on behalf of herself, all similarly situated employees, and other aggrieved

16  employees.").) Defendant replies that this amended DFEH complaint is, in effect, amending her

17  Complaint through motion briefing.

18        "Before pursuing a civil action asserting violation of the FEHA, an employee must file an

19  administrative complaint with the DFEH and obtain a right-to-sue letter from the agency."

20  *Foroudi v. Aerospace Corp.*, 57 Cal. App. 5th 992, 1002 (2020) (citations omitted). "Exhaustion

21  of these procedures is mandatory; an employee may not proceed in court with a FEHA claim

22  without first obtaining a right-to-sue letter." *Id.* at 1002–03 (internal quotation marks and

23  citations omitted). "Moreover, claims in the employee's civil complaint that fall outside the

24  scope of the DFEH complaint are barred." *Id.* at 1003 (citation omitted).

25        In *Foroudi*, the employee filed an original and first amended DFEH complaint but failed

26  to "exhaust his administrative remedies with respect to any class and disparate impact claims."

27  *Id.* at 1003. The plaintiff filed a second amended DFEH complaint "more than three years after

28  the DFEH had permanently closed his case and nearly two years after he filed his civil

1   complaint." *Id.*  The court concluded that such delayed exhaustion contravened the purpose of

2   exhaustion, exceeded DFEH's one-year statute of limitations, and failed to "relate back" to his

3   original, timely complaint because he alleged a disparate impact claim rather than a disparate

4   treatment claim.  *Id.* at 1003–04.

5          The Court need not apply either the relation-back doctrine, nor the court's one-year statute

6   of limitations bar, because Plaintiff timely filed her amended DFEH complaint within FEHA's

7   new, three-year statute of limitations period.  *Pollock v. Tri-Modal Distribution Servs., Inc.*, 11

8   Cal. 5th 918, 931 (2021) ("The current statute uses virtually identical language but allows for a

9   period of three years. (§ 12960, subd. (e).)  This requirement is '[t]he statute of limitations for

10  FEHA actions.'") (citation omitted); *Rotter v. Feng*, No. B313628, 2022 WL 3714538, at *7 (Cal.

11  Ct. App. Aug. 29, 2022) ("The maximum time allowed for filing a complaint with the DFEH is

12  three years from the date that the unlawful practice occurred.") (citation omitted).  This change

13  took effect beginning on January 1, 2020.  *Streets v. Space Sys./Loral, LLC*, No. 20-cv-07901-

14  EJD, 2021 WL 4146962, at *4 (N.D. Cal. Sept. 13, 2021).

15         Plaintiff alleges Amazon "constructively terminated" her employment on December 11,

16  2020.  (Doc. 1-1 at ¶ 57.)  Whether Amazon did so, this is the date that starts the clock for statute

17  of limitations purposes.  Plaintiff amended her DFEH complaint on February 15, 2022, well

18  within the three-year statute of limitations period.  (Ex. A, Doc. 22-1.)  Though this may

19  contravene the purpose behind FEHA's exhaustion requirement, the "exhaustion requirement

20  should not be interpreted as a 'procedural gotcha.'"  *Clark v. Sup. Ct.*, 62 Cal. App. 5th 289, 293

21  (2021) (citation omitted).  The Court is satisfied that Plaintiff's amended DFEH complaint falls

22  within the applicable statute of limitations, and thereby places Defendant on notice of her

23  intention to bring a class action.

24         Second, Defendant moves to dismiss Plaintiff's class claims as time-barred because the

25  four-year period of Plaintiff's putative class "is longer than the statute of limitations for the

26  FEHA-based claims and the claim for wrongful termination."  (*Id.* at 26.)  Plaintiff's putative

27  class contains "[a]ll current and/or former non-exempt employees that worked for Defendants in

28  California within four (4) years prior to the filing of this Complaint and had a disability or

medical condition or were otherwise considered disabled under FEHA."  (Doc. 1-1 at ¶ 64.)

Defendant admits that FEHA's statute of limitations are extended to three years, however,

maintains that this only applies to claims that arise after January 1, 2019—"the extension did not

apply to lapsed claims."  (Doc. 15-1 at 27.)  Furthermore, Defendant argues that "tort claims for

wrongful termination in violation of public policy are governed by a two-year statute of

limitations."  *Id.*  The Court agrees with Defendant.

The Legislature's change to FEHA, providing a new, three-year statute of limitations "did

not (and should not be interpreted to) revive lapsed claims."  *Streets*, 2021 WL 4146962, at *4;

*see also Quesada v. Marten Transport, Ltd.*, No. 2:23-cv-311-DAD-KJN, 2023 WL 8806603, at

*4 n.3 (E.D. Cal. Dec. 20, 2023) ("[T]his three-year limitations period went into effect on January

1, 2020 and does not 'revive lapsed claims' based on actions taken prior to January 1, 2019

(respecting the statute's previous one-year limitations period).") (citation omitted); *Vashisht-Rota

v. Ottawa Univ.*, No. 20-cv-0959-AGS-KSC, 2023 WL 6202040, at *2 (S.D. Cal. Sept. 22, 2023)

(stating that the earliest accrual date for thee-year statute of limitations is January 1, 2019).

Additionally, though the Court has dismissed Plaintiff's wrongful termination in violation

of public policy claim, *supra*, the statute of limitations for this claim is two years.  *Trustlabs, Inc.

v. Jaiyong An*, No. 21-cv-02606-CRB, 2024 WL 1354486, at *11 (N.D. Cal. Mar. 30, 2024)

(citations omitted).  The Court has no alternative but to dismiss Plaintiff's class allegations

because she brings a proposed class with claims that exceed the pertinent statutes of limitation for

these claims.  The Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's class allegations on

this ground.

Finally, Defendant moves to strike the class allegations, urging that because this action

requires too "many individualized inquiries," it lacks commonality under Rule 23.  (*Id.* at 27–28.)

These motions are rarely granted "at the pleading stage on the ground that the claims at issue are

not subject to certification under Rule 23."  *Bui-Ford v. Tesla, Inc.*, No. 4:23-cv-02321, 2024 WL

694485, at *8 (N.D. Cal. Feb. 20, 2024); *Peacock v. Pabst Brewing Co., LLC*, No. 2:18-cv-

00568-TLN-CKD, 2022 WL 446201, at *3 (E.D. Cal. Feb. 14, 2022) ("Accordingly, motions to

strike class allegations are generally disfavored because such issues are more appropriately

resolved on a motion for class certification.") (citations omitted).  "Motions to strike class allegations are thus generally disfavored, particularly where the arguments against the class claims would benefit from discovery or would otherwise be more appropriate in a motion for class certification." *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1277 (C.D. Cal. 2022) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)).

Defendant's arguments relating to the class's potentially deficient commonality and burdensome need for individualized inquiries may have merit.  However, the Court is convinced that such arguments are best left for a motion for class certification, and that considering such arguments at this stage is premature.  For now, such arguments would benefit from discovery, and may be raised again thereafter.  The Court therefore **DENIES** Defendant's Motion to Strike Class Allegations.

J.      Leave to Amend

Courts have broad discretion to grant leave to amend a complaint.  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020).  In determining whether a plaintiff should be granted leave to amend, courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814–15 (9th Cir. 2020) (internal quotation marks and citation omitted).  Generally, Rule 15 advises that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Indeed, "[i]t is the black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint," unless there is "a clear showing that amendment would be futile." *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) (internal quotation marks and citation omitted). Because none of the circumstances for denying leave to amend are present, the Court **GRANTS** Plaintiff leave to amend her Complaint.

**CONCLUSION**

Based upon the foregoing, the Court **ORDERS**:

(1) Defendant's Motion to Dismiss or, in the Alternative, Motion to Strike Plaintiff's

Class Allegations (Doc. 15) is **GRANTED IN PART and DENIED IN PART**:

26

a. The motion to dismiss the claims for failure to provide a timely, good faith, interactive process and unfair business practices is **DENIED**.

b. The motion to dismiss the claims for disability discrimination, retaliation, failure to prevent discrimination, failure to provide a reasonable accommodation, for injunctive relief and for punitive damages is **GRANTED**.

c. The motion to dismiss Plaintiff's class allegations is **GRANTED**. The motion to strike Plaintiff's class allegations is **DENIED**.

(2) **Within 21 days**, Plaintiff may file an amended Complaint. Failure to timely file an amended Complaint indicates that Plaintiff wishes to continue litigation based on the instant Complaint.

(3) Both parties' requests for judicial notice (Doc. 16; Ex. A, Doc. 22-1) are **DENIED AS MOOT**.

IT IS SO ORDERED.

Dated:   **April 30, 2024**

UNITED STATES DISTRICT JUDGE